**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Ethal W. GALINDES A/K/A Ethalwoldo Galindes A/K/A Ethelwaldo Galindes A/K/A Ethelwoldo Galindes, Appellant.**

**Commonwealth of Pennsylvania,
Appellee**

**v.**

**Edgar Ortiz, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 25, 2001.
Filed Nov. 14, 2001.

David B. Mischak, Philadelphia, for Galindes, appellant.

David Zuckerman, Public Defender, Philadelphia, for Ortiz, appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com., appellee.

Lorie K. Dakessian, Assistant District Attorney, Philadelphia, for Com., appellee.

Before: HUDOCK, STEVENS, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Ethal Galindes ("Galindes") and Edgar Ortiz ("Ortiz") appeal from the judgment of sentence imposed following their convictions at a joint bench trial. We affirm.

¶ 2 The trial court issued two separate opinions aptly summarizing the underlying facts of the case: [1]

> On October 26, 1999 at approximately 4:30 a.m., Amy Signell was awakened by a knocking at the front door of her boyfriend's house at 3136 N. Percy Street. The boyfriend, Juan Rodriguez, was not present in the home at the time. Ms Signell heard three knocks but did not answer the door.
>
> Several minutes later she heard her boyfriend's dog, which was chained in the kitchen barking. She then heard what she believed to be someone attempting to break in through the back door.
>
> After Ms. Signell yelled for the dog to stop barking, the banging on the door ceased. Once Ms. Signell determined that no one had actually entered the property, she left to get her boyfriend, Mr. Rodriguez.

---

1. The trial court issued a separate opinion for Ortiz's and Galindes' appeals. The factual recitation in both is nearly identical in wording except for some additional facts involving Galindes' courtroom threats against a testifying witness that led to some additional charges and convictions. Since these facts are not at issue, however, we do not recount them and use the trial court's factual statement as recounted in Ortiz's trial court opinion.

As she left the house to walk to her car, she saw two Hispanic males walking toward the house. She proceeded to drive several blocks away to pick up Mr. Rodriguez and his friend, Paul Cruz. The three of them then returned to the Percy Street property.

Ms. Signell remained in the car as Mr. Rodriguez approached the front of the house, where he heard banging coming from the rear of the home. He and Mr. Cruz ran to the back of the house, where he observed [Ortiz and Galindes], kicking the back door. Mr. Rodriguez recognized [ ] Galindes, as he had previously let him sleep at his Percy Street house. Mr. Rodriguez, was continuing down the alley toward his house when he stepped on something which made a loud noise. He yelled "freeze". Immediately thereafter he heard a gunshot and saw a flash. He screamed again, and the [appellants] began to flee.

When Mr. Rodriguez followed, one of the [appellants] shot at Mr. Rodriguez again. Mr. Rodriguez, who had his own firearm, returned fire three times. One of the shots hit [Ortiz].

After the incident, Mr. Rodriguez observed that the back door was broken in its frame. Neither [Ortiz] nor [Galindes] had permission to be in Mr. Rodriguez' house.

[Mr. Ortiz] was not licensed to carry a firearm and, indeed, was prohibited from possessing a firearm because of a prior criminal conviction.

Ortiz Trial Court Opinion, 3/08/01, at 2–3.

¶ 3 As a result, the police arrested both Mr. Ortiz and Mr. Galindes. Following a joint bench trial on June 7, 2000, the trial court found Mr. Ortiz guilty of attempted burglary; two counts of aggravated assault; violation of the Uniform Firearms Act (VUFA) §§ 6105, 6106, & 6108; possessing an instrument of crime (PIC);

criminal mischief; attempted theft; criminal trespass; simple assault and criminal conspiracy. The trial court found Mr. Galindes guilty of aggravated assault, attempted burglary, criminal conspiracy, VUFA §§ 6106 & 6108, criminal mischief, attempted theft, criminal trespass, simple assault, and criminal conspiracy. The trial court also convicted Mr. Galindes of retaliation against a witness, terroristic threats, and obstructing the administration of the law from a separate criminal information.

¶ 4 On September 21, 2000, the trial court sentenced Mr. Galindes to concurrent sentences of five to ten years' incarceration on the aggravated assault, attempted burglary, and criminal conspiracy convictions. The trial court also imposed a consecutive sentence of one to two years' incarceration on the retaliation against a witness charge. No further penalty was imposed on the remaining charges due to merger.

¶ 5 On November 21, 2000, the trial court sentenced Mr. Ortiz to concurrent sentences of five to ten years' incarceration on the aggravated assault, attempted burglary, and criminal conspiracy convictions. The trial court also imposed concurrent sentences of one to two years' incarceration on the possession an instrument of crime and VUFA convictions. No further penalty was imposed on the remaining charges due to merger. These timely appeals followed.

¶ 6 Mr. Ortiz raises the following issues for review:

Was not the evidence insufficient as a matter of law to support the conviction for assault and weapons offenses, and conspiracy to commit these offense, where there was no evidence the instrument that caused a "pop and a flash" was a weapon capable of causing injury, or was ever pointed or directed at the

complainant, and even if found to be a gun, can [Mr. Ortiz] as the non-shooter be held criminally culpable for the mental state of his co-defendant [Mr. Galindes]?

Brief for Appellant at 3, Commonwealth v. Ortiz (No.2000 EDA 3498).

¶ 7 Mr. Galindes raises the following issues for review:

I.  Whether the evidence was insufficient to sustain the verdict?

II.  Whether the verdict was against the weight of the evidence?

III.  Whether the trial court erred in permitting testimony of prior bad acts?

Brief for Appellant at 2, Commonwealth v. Galindes (No.2000 EDA 2916).

¶ 8 Mr. Ortiz claims the evidence was insufficient to convict him of aggravated assault, the weapons offenses (VUFA & PIC), and criminal conspiracy. Mr. Galindes also claims the evidence was insufficient to convict him of aggravated assault, attempted burglary, the weapon offenses (VUFA), and criminal conspiracy. We will address appellants' insufficiency claims together where appropriate.[2]

■ ¶ 9 When considering a challenge to the sufficiency of the evidence, this Court must view the evidence presented in a light most favorable to the Commonwealth, the verdict winner, and draw all reasonable inferences therefrom. *Commonwealth v. Ketterer*, 725 A.2d 801, 803 (Pa.Super.1999). We must then determine whether the evidence was sufficient to permit the fact-finder to conclude that all of the elements of the crimes charged were proven beyond a reasonable doubt. *Id.* Any question of doubt is for the fact-finder, unless the evidence is so weak and inconclusive that as a matter of law no

probability of fact can be drawn from the combined circumstances. *Id.* at 804. "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101, 1105 (1988).

## ATTEMPTED BURGLARY

¶ 10 Mr. Galindes claims the evidence was insufficient to sustain his attempted burglary conviction because the Commonwealth failed to prove he had the intent to commit a crime inside Mr. Rodriquez' home. We disagree.

■ ¶ 11 "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S.A. § 3502(a). "Intent may be proved by direct evidence or inferred from circumstantial evidence." *Commonwealth v. Cannon*, 297 Pa.Super. 106, 443 A.2d 322, 324 (1982).

■ ¶ 12 At approximately 4:30 a.m., appellants came to Mr. Rodriguez' front door and knocked three times. N.T. Trial, 6/7/00, at 12. When no one answered, they proceeded to the back door whereupon Ms. Signell heard loud banging and kicking noises. *Id.* at 13. The noises momentarily stopped once Ms. Signell made her presence known. *Id.* at 13–14. Appellants,

---

**2.** Both appellants claim the evidence was insufficient to sustain their convictions for ag-

gravated assault, weapons offenses, and criminal conspiracy.

however, resumed their attempt to enter the home through the back door when Ms. Signell left to get Mr. Rodriguez. Mr. Rodriguez, upon arriving at the home, heard and watched appellants kick his back door. *Id.* at 46, 47. Once Mr. Rodriguez made his presence known, both Mr. Galindes and Mr. Ortiz attempted to flee down an alleyway while shooting at him. *Id.* at 49. The home's back door and frame, as a result, were destroyed. *Id.* at 52.

¶ 13 Viewing the evidence in the light most favorable to the Commonwealth, we find that Mr. Galindes intended to enter Mr. Rodriguez' home and commit a crime. Mr. Galindes' attempt to gain entry by kicking the back door constituted a substantial step toward committing burglary. Moreover, the circumstances surrounding the incident, the late hour, the knock at the front door, the kicking of the back door, the fleeing when confronted and then firing shots, all allowed the trial court to reasonably infer Mr. Galindes possessed the intent to commit a crime. *See Commonwealth v. Willetts,* 277 Pa.Super. 538, 419 A.2d 1280, 1282 (1980) (evidence, including defendant's attempt to break padlock on garage, late hour at which he made his attempt, and his flight upon arrival of police, was sufficient to sustain conviction of attempted burglary). Thus, the evidence sufficiently supports the attempted burglary conviction.

## CRIMINAL CONSPIRACY

¶ 14 Mr. Ortiz and Mr. Galindes both claim the evidence was insufficient to sustain their criminal conspiracy convictions. "A conspiracy conviction requires proof of (1) an intent to commit or aid in

an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." *Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1162 (2000); *see also* 18 Pa.C.S.A. § 903(a), (e). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.*

¶ 15 Mr. Galindes, as discussed above in the attempted burglary claim, intended to commit an unlawful act, i.e., burglary. The trial court reasonably inferred an agreement existed between Mr. Galindes and Mr. Ortiz based upon their conduct. Appellants, at 4:30 a.m., knocked on Mr. Rodriguez' front door to check if someone was home. They then went to the back door and took turns kicking it; when discovered, they fled and fired shots. Moreover, both engaged in the requisite overt act by taking turns kicking the back door. N.T. Trial, 6/7/00, at 47, *see Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1344–45 (1994) (member of assault conspiracy held equally culpable for co-conspirator's murder of victim). The challenges to the criminal conspiracy convictions are meritless.

## WEAPONS OFFENSES

¶ 16 Mr. Ortiz and Mr. Galindes claim there was insufficient evidence to sustain their weapons convictions.[3] The essence of both arguments is that Mr. Rodriguez never saw a gun; all he heard was a "pop" and saw a flash. Further, the police never

---

**3.** Both appellants were convicted under 18 Pa.C.S.A. §§ 6106 and 6108. Mr. Ortiz was also convicted under § 6105. Each of these statutes requires possession of a firearm without a license or some manner of exemption.

Thus, a finding of firearm possession results in a conviction as neither Mr. Ortiz nor Mr. Galindes claims they had a license or fall under an exemption.

recovered a gun. We find no merit to their claims.

¶ 17 In *Commonwealth v. Healey,* 343 Pa.Super. 323, 494 A.2d 869, 870 (1985), our Court held that within the meaning of 42 Pa.C.S.A. § 9712, visible possession of a gun is not necessary to find a gun was used. Visible possession means "possession which manifests itself in the process of the crime." *Id.* This definition includes situations where a firearm is visible to the victim or a third party and situations where a firearm is hidden but has a visible effect on the victim.[4] *Id.* After Mr. Rodriguez yelled to Mr. Ortiz and Mr. Galindes to "freeze," he immediately heard a gunshot and saw a flash. N.T. Trial, 6/07/00, at 47–48. Mr. Rodriguez testified, initially, he believed he was shot. *Id.* at 47. When Mr. Rodriguez began to chase the men, he heard another gunshot and saw another flash. *Id.* at 48. Although Mr. Rodriguez did not see the gun, possession of the firearm undoubtedly manifested itself in the process of the crime from both the gunshot sounds and accompanying flashes. *See Commonwealth v. Woodlyn,* 345 Pa.Super. 200, 497 A.2d 1374 (1985) (evidence sufficient to find the appellant visibly possessed a gun where appellant removed his hand from his pocket in the shape of a fist with the knuckles visible and then the victim heard a "bang," saw smoke, and felt what later proved to be a bullet impact but the victim never actually saw the gun). Viewing this evidence in the light most favorable to the Commonwealth, it was reasonable for the trial court, as fact-finder, to conclude a firearm was used.

¶ 18 Mr. Galindes, however, argues there is insufficient evidence to convict him for conspiracy in firing gunshots during the attempted burglary.[5] We disagree.

The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.

*Commonwealth v. Hannibal,* 562 Pa. 132, 753 A.2d 1265, 1274 (2000). Mr. Galindes, in this case, engaged in a conspiracy with Mr. Ortiz to commit burglary. A firearm was used in furtherance of the conspiracy to affect their escape. Because Mr. Ortiz and Mr. Galindes engaged in a conspiracy to commit burglary, the fact that one of them shot at Mr. Rodriguez renders the other equally criminally responsible. *See id.* It is not necessary to prove who actually fired the weapon, so long as it is shown it was fired. *See Commonwealth v. Simpson,* 562 Pa. 255, 754 A.2d 1264 (2000) (each member of a conspiracy to commit murder can be convicted of capital murder regardless of which of the conspirators inflicted the fatal wound). Thus, Mr. Galindes' claim fails regardless of who fired the gun.

---

4. We note that although neither appellant was convicted under section 9712, we find the reasoning underlying the proof of "visible possession" persuasive to find that a firearm was possessed in this case.

5. Mr. Galindes appears to argue that Mr. Ortiz fired the shots at Mr. Rodriguez. Therefore, he asserts that because he did not shoot at Mr. Rodriguez, he cannot be convicted of the weapons charges.

## AGGRAVATED ASSAULT

¶19 Mr. Ortiz and Mr. Galindes next claim there was insufficient evidence to support their aggravated assault convictions. The Commonwealth, in sustaining an aggravated assault conviction, need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred.[6] *Commonwealth v. Elrod*, 392 Pa.Super. 274, 572 A.2d 1229, 1231 (1990); *see also* 18 Pa.C.S.A. § 2702(a)(1). Attempt, for aggravated assault purposes, is found where "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another." *Commonwealth v. Lopez*, 439 Pa.Super. 625, 654 A.2d 1150, 1154 (1995). The Commonwealth can establish specific intent from the circumstances surrounding the incident. *Elrod*, 572 A.2d at 1231.

¶20 In *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176, 1178 (1982), we found that firing a gun constitutes the type of conduct that is likely to result in serious bodily injury. Further, the intent to injure, as required by the statute, is also inferred from such conduct. *Id.* After Mr. Rodriguez yelled to Mr. Ortiz and Mr. Galindes to "freeze," he immediately heard a gunshot and saw a flash. N.T. Trial, 6/07/00, at 47–48. When Mr. Rodriguez began to chase the men, he heard another gunshot and saw another flash. *Id.* at 48. Even though Mr. Rodriguez was not struck by any bullets, the act of firing a gun toward him constitutes an attempt to cause serious bodily injury. *See Wanamaker*, 444 A.2d at 1178. We agree with the trial court, viewing the evidence in the light most favorable to the Commonwealth, that the aggravated assault charge was sufficiently supported.

¶21 Mr. Ortiz, however, claims insufficient evidence existed to support his conspiracy to commit aggravated assault conviction because he did not possess the requisite specific intent.[7] Mr. Ortiz, in support of his argument, erroneously relies upon *Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456 (1998). In *Wayne*, our Supreme Court carved out an exception to the general co-conspirator rule, requiring that only in cases of first-degree murder, each member of the conspiracy must individually possess the specific intent to kill. *Id.* at 464. "[T]he general rule of law pertaining to the culpability of conspirators [,however,] is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy." *Hannibal*, 753 A.2d at 1274.

¶22 Mr. Ortiz engaged in a conspiracy with Mr. Galindes to commit burglary, not first-degree murder. As a result, the *Wayne* specific intent exception to the general co-conspirator rule does not apply. Mr. Ortiz, therefore, is criminally responsible for all acts committed by Mr. Galindes. Accordingly, appellants' sufficiency of the evidence claims fail.

6. Because Mr. Ortiz and Mr. Galindes were engaged in a conspiracy to commit burglary, the act of one of them shooting at Mr. Rodriguez renders the other co-conspirator criminally responsible as discussed above. Thus, it is not necessary to prove which of them actually fired the firearm, so long as it is shown that at least one of them did fire it at Mr. Rodriguez.

7. Mr. Ortiz appears to argue that Mr. Galindes fired the shots at Mr. Rodriguez. Therefore, he asserts because he did not shoot at Mr. Rodriguez, he cannot be found to have the specific intent necessary to be convicted of aggravated assault.

## WEIGHT OF THE EVIDENCE

¶ 23 Mr. Galindes next claims the trial court's verdict was against the weight of the evidence. Mr. Galindes, specifically, attacks the findings that he possessed the intent to commit a crime inside Mr. Rodriguez' home and that he fired a gun. "[A] true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' " but questions which evidence is to be believed. *Armbruster v. Horowitz*, 744 A.2d 285, 286 (Pa.Super.1999) (citations omitted). An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111, 113 (1991). Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Id.* "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548, 549 (1992). Our review, therefore, is confined to whether the trial court abused its discretion.

¶ 24 This Court is not swayed by Mr. Galindes' arguments. We already agreed with the trial court that sufficient evidence existed to support both the attempted burglary conviction and weapons convictions. The trial court, sitting as fact-finder, chose to believe the two Commonwealth witnesses' uncontradicted testimony. *See Valette*, 613 A.2d at 549. Neither Mr. Galindes' argument nor the record reveals that the verdicts were against the weight of the evidence. Thus, we cannot say that the trial court's verdicts shock our sense of justice or that the trial court abused its discretion. Accordingly, Mr. Galindes' claim fails.

## PRIOR BAD ACTS ARGUMENT

¶ 25 Mr. Galindes' final claim is that the trial court erred in permitting testimony of his prior bad acts. Mr. Galindes argues the trial court abused its discretion in allowing Mr. Rodriguez' testimony concerning appellants' voices. Mr. Rodriguez testified he recognized Mr. Galindes' voice because Mr. Galindes, on three separate occasions, broke into his home. N.T. Trial, 6/07/00, at 48, 49.

¶ 26 Evidence is "relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 227–28 (1995). "The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion." *Commonwealth v. Richter*, 551 Pa. 507, 711 A.2d 464, 466 (1998). Evidence of other crimes or wrongs is not admissible against a defendant being prosecuted for another crime if the sole purpose is to show the defendant's bad character or propensity for committing criminal acts. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987). Such evidence, however, may be admissible under "special circumstances." *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 772 (1998). Our Supreme Court has considered such evidence relevant when it is used for a legitimate purpose and does not merely prejudice the defendant by portraying him as a person of bad character. *Id.* Some recognized "special circumstances" include proving

motive, intent, absence of mistake, common scheme or plan or identity of the person charged. *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491, 497 (1988) (emphasis added).

■■■■ ¶ 27 The trial court ruled the evidence was admissible to show Mr. Rodriguez' ability to recognize Mr. Galindes and identify his voice. Galindes Trial Court Opinion, 10/23/00, at 7. We agree. Mr. Galindes' prior alleged bad acts were not introduced to show his propensity to break into Mr. Rodriguez' house. Rather, the evidence was used to establish his identity.

■■■■ ¶ 28 Mr. Galindes contends the evidence's prejudicial effect outweighed its probative value. We disagree. Even assuming, *arguendo,* the trial court erred in admitting the evidence, the error is harmless. It is well settled that in a bench trial the admission of a defendant's prior record is harmless error since the trial judge is presumed capable of disregarding inadmissible evidence. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179, 183, n. 6 (1980) (A judge, as fact-finder, is presumed to disregard inadmissible evidence and consider only competent evidence). Thus, no abuse of discretion occurred in admitting this evidence.

¶ 29 Judgments of sentence affirmed.