J-A07002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAYMOND CAMPBELL, | |
| Appellant | No. 126 WDA 2014 |

Appeal from the Judgment of Sentence Entered October 24, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016091-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 9, 2015**

Appellant, Shaymond Campbell, appeals from the judgment of sentence of two and a half (2½) to five (5) years' incarceration, followed by five (5) years' probation, imposed after he was convicted of person not to possess a firearm, terroristic threats, criminal mischief, and disorderly conduct.  Appellant challenges the sufficiency of the evidence to sustain his convictions.  We affirm.

The facts which led to Appellant's convictions are set forth by the trial court in the following portion of its Rule 1925(a) opinion:

> [Appellant's] charges stem from an incident at the home of his former girlfriend, Alexis Kaduck, in the early morning hours between November 5 and November 6, 2012.  Appellant had been staying in the home, at 342 Plum Street in Carnegie, with Alexis, her mother, Carrie Kaduck, and Alexis' 16 year old brother.  On the night at issue, [Appellant] and Alexis had been arguing in [Alexis'] room about a text that [Alexis] had received from another man.  Alexis' mother, Ms. Kaduck, entered the

room and told the couple to stop arguing because her son was sleeping. At that time, [Appellant] was holding Alexis['] iPhone. [Appellant] threw the phone against the wall, leaving a hole in the wall and breaking the phone in half.

After this occurred, Ms. Kaduck demanded that [Appellant] leave her home. [Appellant] grabbed a bag and headed down the stairs to the first floor and, ultimately, out the front door. Alexis followed [Appellant] outside. Ms. Kaduck stood on the front porch with Alexis as Alexis asked [Appellant] to return her phone. [Appellant] threw the phone onto the ground and smashed it with his foot. Ms. Kaduck grabbed her daughter's arm and told her to get in the house. She closed the front door as soon as both she and her daughter were in the home. Seconds later, Ms. Kaduck heard four (4) or five (5) loud noises, which she identified as gun shots. Upon hearing the shots, she directed her daughter, Alexis, and her son, who had woken up, to immediately go upstairs to her bedroom.

Ms. Kaduck called 911 as her children ran up the stairs. While she was on the phone with a 911 operator and heading upstairs, she heard another loud noise and went down the stairs to see what was occurring. She saw [Appellant] trying to break down the back door to enter the house, and she ran back up the stairs and went into her bedroom with her children. [Appellant] broke through the back door, and, as [Appellant] ascended the stairs, Ms. Kaduck opened the door slightly to show him that she was on the phone with 911. He looked at her and said, "Okay, snitch, I have something for you." [Appellant] then went down the stairs and out the front door. Moments later, Ms. Kaduck and Alexis heard a loud crash, which occurred when [Appellant] threw a flower pot through the back windshield of Ms. Kaduck's car.

A neighbor had also heard two (2) sets of noise[s] from the Kaduck's house. The first noises that she heard she initially thought were firecrackers. However, after learning that Ms. Kaduck's vehicle was struck by bullets, she acknowledged that the sounds were consistent with a gun being discharged. The second set of noises that she heard consisted of a bang followed by what sounded like someone hitting a door. The witness, Jenaya Mebane, went downstairs and looked out her window to identify the noise. At that point, she saw [Appellant] run down the front porch steps and throw something into Ms. Kaduck's vehicle.

Ms. Kaduck and Alexis came outside of the home after the police arrived and saw that Ms. Kaduck's car had been shot seven (7) to nine (9) times. The bullets struck the engine, the dashboard and the seats, as well as smashed all of the windows. The vehicle was a total loss. They also saw that a flower pot had been thrown through the rear window of the vehicle. Additionally, the back doors to the Kaduck residence were broken down.

Trial Court Opinion (TCO), 7/22/14, at 2-4 (citations to the record omitted).

Based on the aforementioned evidence presented at a non-jury trial on October 24, 2013, Appellant was found guilty of person not to possess a firearm, terroristic threats, criminal mischief, and disorderly conduct and was sentenced by the court to four (4) to eight (8) years' incarceration, to be followed by four (4) years' probation. Appellant was further ordered to pay $7,188 in restitution. Appellant subsequently filed a motion to modify sentence, which the court granted, in part, on December 19, 2013, reducing his sentence to two and a half (2½) to five (5) years' incarceration, to be followed by five (5) years' probation.

Following the modification of his sentence, Appellant filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant presents the following sole issue for our review: "Are the guilty verdicts for the crimes of [p]ossession of a [f]irearm and [t]erroristic [t]hreats supported by sufficient evidence?" Appellant's Brief, at 7.

The standard we apply in reviewing a challenge to the sufficiency of the evidence is well-established:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.*; *see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038-39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's conviction will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074-75 (Pa. Super. 2013) (citing *Commonwealth v. Pedota*, 64 A.3d 634, 635-636 (Pa. Super. 2013)).

Appellant first challenges the sufficiency of the evidence to support his conviction of person not to possess a firearm under 18 Pa.C.S. § 6105(a)(1).

"In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009). Appellant does not dispute that he was convicted of an enumerated offense that prohibits him from possessing a firearm. Appellant's Brief, at 13. Instead, Appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that he possessed a firearm. *Id.* Appellant references the events that took place after the police arrived at the scene, as well as during his apprehension. Appellant's Brief, 16-20. The relevant facts are summarized by the trial court as follows:

> Carnegie police officers arrived within minutes of the 911 call and noted the damage done to the back door. Approximately seven (7) minutes after the first officers were dispatched to the scene, Scott Township Sergeant Stephen Fury apprehended [Appellant] at the corner of Ridge Avenue and Hays Street, several blocks away from the Kaducks' home on Plum Avenue. [Appellant] was arrested and patted down, but no gun was recovered from him. Officer Timothy Clark of the Carnegie Police Department transported [Appellant] to the Allegheny County Jail and testified credibly that [Appellant], without questioning or prompting, asked the officer "Did you find the gun?"[]

> A K-9 officer was brought in to search the area. Although the canine did find a portion of Ms. Kaduck's cell phone in an area behind the home, the dog did not locate [Appellant's] weapon. However, the officer handler for the K-9 explained that the dog does not track down physical items unless instructed to do so. In the back yard, the dog was instructed to find an object. However, when the dog was taken to the front of the

home, it was commanded to track [Appellant's] human scent, which led him to follow [Appellant's] path. Several months later, the Allegheny County Medical Examiner's Office found that shell casings recovered from the scene on Plum Avenue matched a 9mm Glock pistol that was involved in a matter not relating to [Appellant].

TCO, at 4-5. (citations to the record omitted).

Specifically, Appellant avers that the evidence fails to provide any link whatsoever between himself and the firearm that shot Ms. Kaduck's car. Appellant's Brief, at 19. The essence of Appellant's argument is that no witnesses saw him with a firearm or saw him shoot a firearm on the night in question, nor was he found in possession of a firearm. Appellant, therefore, suggests that his conviction is based on pure speculation. *Id.* at 11.

In support of his sufficiency claim, Appellant cites ***Commonwealth v. Galindes***, 786 A.2d 1004 (Pa. Super. 2001), where the defendants raised an insufficiency claim regarding their possession of firearms convictions, based on the fact that the victim never saw a firearm and no firearm was recovered by the police. Appellant's Brief, at 27-29. However, similar to the case at bar, the court in ***Galindes*** found the defendants' insufficiency claims without merit. ***Galindes***, 786 A.2d at 1011.

In ***Galindes***, the victim heard banging coming from the rear of his home and observed the defendants kicking in the back door. The victim yelled "freeze" and "[i]mmediately thereafter he heard a gunshot and saw a flash." *Id.* at 1008. The court concluded "[a]lthough [the victim] did not see the gun, possession of the firearm undoubtedly manifested itself in the

process of the crime from both the gunshot sounds and accompanying flashes." *Id.* at 1011.

Appellant attempts to distinguish the case at bar, noting that in *Galindes*, "[e]ven though the gun was not seen by the victim, there was no question that the defendant was in the same location as both the shot that the victim heard and the accompanying flash from the weapon. There was a visible effect on the victim. That did not occur in the case at bar." Appellant's Brief, at 28-29 (emphasis omitted). We disagree with Appellants' distinguishment. The timeline of events in the instant case, combined with the sound of gunshots and bullet holes found in Ms. Kaduck's car, support the inference of Appellant's possession of a firearm. Appellant's statement, "[d]id you find the gun?" to Officer Clark while being transported to the jail further suggests that Appellant had knowledge of the firearm used at the scene of the incident.

Moreover, the Commonwealth presented evidence which established that Appellant had constructive possession of a firearm. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not . . . [C]onstructive possession may be established by the totality of the circumstances." *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (citing *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001)). In reviewing the totality of the circumstances in the case at bar, the trial court stated that it:

did not… have any doubt that [Appellant] was in possession of a gun that night and that he fired it at and into Ms. Kaduck's car. The only person on the street in the area of the Kaduck's vehicle within seconds of Ms. Kaduck and Alexis returning inside the home was [Appellant]. There was no evidence presented of another person or vehicle passing by the home in the mere seconds between Ms. Kaduck closing the door and the sound of gunshots. [Appellant] was angry at both Kaducks, and was standing right next to the vehicle immediately before it was destroyed by gunfire. This is not a situation where the court speculated or guessed at what occurred. It is simply the application of strong and compelling circumstantial evidence which compels the guilty verdict.

TCO, at 8-9.

Based on our review of the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude there was sufficient evidence to support the trial court's finding that Appellant was in possession of a firearm. Therefore, we uphold Appellant's conviction of person not to possess a firearm.

Next, we address Appellant's sufficiency claim regarding his conviction of terroristic threats under 18 Pa.C.S. § 2706(a)(1), which provides, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." Accordingly, in order to sustain a terroristic threat conviction, the Commonwealth must prove that Appellant "threaten[ed] to commit a crime of violence and that he communicate[d] the threat with the intent to terrorize or with reckless disregard for the risk of causing terror." *Commonwealth v. Kelley*, 664 A.2d 123, 128 (Pa. Super.

1995) (citing **Commonwealth v. Campbell**, 625 A.2d 1215 (Pa. Super.

1993); **Commonwealth v. Cancilla**, 649 A.2d 991 (Pa. Super. 1994)).

> Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

**Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003)

(citations and internal quotation marks omitted).

Herein, the basis of the terroristic threats conviction is Appellant's statement, "Okay, snitch, I have something for you." TCO, at 3. Appellant avers that the words "I have something for you," do not reference a crime of violence. Appellant's Brief, at 31. However, "[e]ven a single verbal threat might be made… as to support the inference that the actor intended to terrorize…." **Campbell**, 625 A.2d at 522 (quoting **Commonwealth v. Ashford**, 407 A.2d 1328, 1329 (Pa. Super. 1979)). "[I]t is unnecessary for [the defendant] to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." **Campbell**, 624 A.2d at 522 (quoting **Commonwealth v. Hudgens**, 582 A.2d 1352 (Pa. Super. 1990)).

Examining the context in which Appellant's words were spoken, Ms. Kaduck would reasonably have believed that Appellant was threatening her with a violent act. She had just heard what she believed to be gunshots. Moments later, Appellant broke into her house by kicking down the back

door and was coming up the stairs towards her. It would be reasonable for Ms. Kaduck to assume that her safety was being threatened in these circumstances. Additionally, the Commonwealth submits that the use of the word "snitch" by Appellant constitutes an explicit threat of retaliation against her. We agree.

Appellant further avers that his action of throwing a flower pot through the rear window of Ms. Kaduck's car following his statement to Ms. Kaduck does not constitute a crime of violence. *Id.* Here, Appellant mistakenly relies on his actions following the threat, rather than the words that were spoken and the psychological distress caused to Ms. Kaduck in the moment. Appellant's actions following the verbal threat do not alter the perceived threat to Ms. Kaduck's personal safety at the time the words were spoken.

In the alternative, Appellant avers that the statement he uttered to Ms. Kaduck was made during a "heated exchange" and that the offense of terroristic threats is not intended to criminalize mere "spur of the moment" utterances made during a "heated exchange". Appellant's Brief, at 33-34. (citations omitted). While Appellant was admittedly angry,[1] "being angry does not render a person incapable of forming the intent to terrorize. Rather, … this Court must consider the totality of circumstances to

_____

[1] "[Appellant] was extremely angry and emotionally compromised by the text message that he found from another man to his girlfriend. He 'flew off the handle'…." Appellant's Brief, at 34.

- 10 -

determine whether the threat was a result of a heated verbal exchange or confrontation." *In re J.H.*, 797 A.2d 260, 263 (Pa. Super. 2002) (citations and internal quotation marks omitted).

Based on the circumstances surrounding the incident in question, we conclude that Appellant's words were not merely made during a heated exchange. Ms. Kaduck had retreated back into her house and closed the door. Appellant escalated the incident on his own when he then proceeded to break down the back door of Ms. Kaduck's house and climbed the stairs towards the bedroom where Ms. Kaduck was hiding with her two children. Ms. Kaduck did not say anything to Appellant. Rather, she merely opened the bedroom door so that Appellant could hear that she was on the phone with 911. Appellant's statement appears to have been made deliberately with the intent to threaten retaliation against Ms. Kaduck. We, therefore, conclude there was sufficient evidence to support Appellant's conviction of terroristic threats.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/2015

- 11 -

THE COURT OF COMMON PLEAS
OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA,

CRIMINAL DIVISION

vs.

CC: 2012-16091

SHAYMOND CAMPBELL,

Defendant.

OPINION

This is a direct appeal following a non-jury trial on October 24, 2013 and the modification of the Defendant's sentence on December 19, 2013. The Defendant was charged with Person not to Possess a Firearm (18 Pa. C.S.A. §6105), Terroristic Threats (18 Pa. C.S.A. §2706), Criminal Mischief (18 Pa. C.S.A. §3304), and Disorderly Conduct (18 Pa. C.S.A. §5503). On October 24, 2013, this court found him guilty of all charges following a non-jury trial. Immediately following the guilty verdict, this court sentenced the Defendant to four (4) to eight (8) years incarceration, with credit for time-served, to be followed by four (4) years of probation. Further, the Defendant was ordered to pay $7,188 in restitution. Following argument on, and consideration of, the Defendant's Motion to Modify Sentence, this court granted the Defendant's motion on December 19, 2013, reducing his period of incarceration to two and a half (2 ½) to five

(5) years incarceration, with credit for time-served, to be followed by five (5) years probation. Restitution was again ordered to be paid in the amount of $7,188.

On appeal, the Defendant asserts that there was insufficient evidence to convict him of Person not to Possess a Firearm and Terroristic Threats and that this court's verdict was against the weight of the evidence.

The Defendant's charges stem from an incident at the home of his former girlfriend, Alexis Kaduck, in the early morning hours between November 5 and November 6, 2012. (T.R. 10/24/13, p. 11). The Defendant had been staying in the home, at 342 Plum Street in Carnegie, with Alexis, her mother, Carrie Kaduck, and Alexis' 16 year old brother. (T.R. 10/24/13, pp. 11, 28). On the night at issue, the Defendant and Alexis had been arguing in her room about a text that she had received from another man. (T.R. 10/24/13, pp. 12, 13). Alexis' mother, Ms. Kaduck, entered the room and told the couple to stop arguing because her son was sleeping. (T.R. 10/24/13, pp. 28-29). At that time, the Defendant was holding Alexis's iPhone. The Defendant threw the phone against the wall, leaving a hole in the wall and breaking the phone in half. (T.R. 10/24/13, pp. 13, 29).

After this occurred, Ms. Kaduck demanded that the Defendant leave her home. The Defendant grabbed a bag and headed down the stairs to the first floor and, ultimately, out the front door. (T.R. 10/24/13, pp. 13, 29). Alexis followed the Defendant outside. Ms. Kaduck stood on the front porch with Alexis as Alexis asked the Defendant

2

to return her phone. (T.R. 10/24/13, pp. 14, 29). The Defendant threw the phone onto the ground and smashed it with his foot. (T.R. 10/24/13, pp. 14, 29). Ms. Kaduck grabbed her daughter's arm and told her to get in the house. She closed the front door as soon as both she and her daughter were in the home. (T.R. 10/24/13, pp. 14, 30). Seconds later, Ms. Kaduck heard four (4) or five (5) loud noises, which she identified as gun shots. (T.R. 10/24/13, pp. 31, 34-35). Upon hearing the shots, she directed her daughter, Alexis, and her son, who had woken up, to immediately go upstairs to her bedroom. (T.R. 10/24/13, p. 31).

Ms. Kaduck called 911 as her children ran up the stairs. While she was on the phone with a 911 operator and heading upstairs, she heard another loud noise and went down the stairs to see what was occurring. (T.R. 10/24/13, p. 31). She saw the Defendant trying to break down the back door to enter the house, and she ran back up the stairs and went into her bedroom with her children. (T.R. 10/24/13, p. 31). The Defendant broke through the back door, and, as the Defendant ascended the stairs, Ms. Kaduck opened the door slightly to show him that she was on the phone with 911. (T.R. 10/24/13, p. 31). He looked at her and said, "Okay, snitch, I have something for you." (T.R. 10/24/13, pp. 25, 31). The Defendant then went down the stairs and out the front door. (T.R. 10/24/13, pp. 17, 32). Moments later, Ms. Kaduck and Alexis heard a loud crash, which occurred when the Defendant threw a flower pot through the back windshield of Ms. Kaduck's car. (T.R. 10/24/13, pp. 17, 32).

3

A neighbor had also heard two (2) sets of noise from the Kaduck's house. The first noises that she heard she initially thought were firecrackers. (T.R. 10/24/13, p. 59). However, after learning that Ms. Kaduck's vehicle was struck by bullets, she acknowledged that the sounds were consistent with a gun being discharged. (T.R. 10/24/13, pp. 62-63). The second set of noises that she heard consisted of a bang followed by what sounded like someone hitting a door. (T.R. 10/24/13, p. 60). The witness, Jenaya Mebane, went downstairs and looked out her window to identify the noise. (T.R. 10/24/13, p. 60). At that point, she saw the Defendant run down the front porch steps and throw something into Ms. Kaduck's vehicle. (T.R. 10/24/13, p. 60).

Ms. Kaduck and Alexis came outside of the home after the police arrived and saw that Ms. Kaduck's car had been shot seven (7) to nine (9) times. (T.R. 10/24/13, pp. 18, 32-33). The bullets struck the engine, the dashboard and the seats, as well as smashed all of the windows. The vehicle was a total loss. (T.R. 10/24/13, p. 33). They also saw that a flower pot had been thrown through the rear window of the vehicle. (T.R. 10/24/13, pp. 19, 33). Additionally, the back doors to the Kaduck residence were broken down. (T.R. 10/24/13, p. 34).

Carnegie police officers arrived within minutes of the 911 call and noted the damage done to the back door. (T.R. 10/24/13, pp. 65, 67). Approximately seven (7) minutes after the first officers were dispatched to the scene, Scott Township Sergeant Stephen Fury apprehended the Defendant at the corner of Ridge Avenue and Hays Street, several blocks away from the Kaducks' home on Plum Avenue. (T.R. 10/24/13,

4

pp. 88, 90, 100-102, 114). The Defendant was arrested and patted down, but no gun was recovered from him. (T.R. 10/24/13, p. 102). Officer Timothy Clark of the Carnegie Police Department transported the Defendant to the Allegheny County Jail and testified credibly that the Defendant, without questioning or prompting, asked the officer "Did you find the gun?" (T.R. 10/24/13, pp. 80-81).

A K-9 officer was brought in to search the area. (T.R. 10/24/13, p. 69). Although the canine did find a portion of Ms. Kaduck's cell phone in an area behind the home, the dog did not locate the Defendant's weapon. (T.R. 10/24/13, p. 117, 119-120). However, the officer handler for the K-9 explained that the dog does not track down physical items unless instructed to do so. (T.R. 10/24/13, p. 125). In the back yard, the dog was instructed to find an object. (T.R. 10/24/13, p. 127). However, when the dog was taken to the front of the home, it was commanded to track the Defendant's human scent, which led him to follow the Defendant's path. (T.R. 10/24/13, p. 127). Several months later, the Allegheny County Medical Examiner's Office found that shell casings recovered from the scene on Plum Avenue matched a 9mm Glock pistol that was involved in a matter not relating to the Defendant. (T.R. 10/24/13, pp. 39-46).

On appeal, the Defendant asserts that there was insufficient evidence to find him guilty of both Person Not to Possess and Terroristic Threats and that this court's verdict was against the weight of the evidence. For the following reasons set forth below, this court's verdict was supported by evidence which proved the Defendant guilty beyond a reasonable doubt for both offenses.

5

The standard of review regarding claims of insufficiency of the evidence is well-settled. In reviewing the sufficiency of the evidence, the appellate court must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. Com. v. Jones, 954 A.2d 1194 (Pa. Super. 2008). An appellate court may not re-weigh the evidence and substitute its judgment for that of the fact-finder. Id. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Com. v. Baker, 72 A.3d 652, 658 (Pa. Super. 2013). However, it is well recognized, however, that a criminal conviction cannot be based upon mere speculation and conjecture. Com. v. Graham, 81 A.3d 137, 142 (Pa. Super. 2013).

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. When evidence conflicts, it is the sole province of the fact finder to determine credibility and to believe all, part or none of the evidence. Com. v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003). An appellate court may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Com. v. Hunzer, 868 A.2d 498, 506 (Pa. Super. 2005). Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no

6

probability of fact can be drawn from the combined circumstances. <u>Com. v. Perez</u>, 931 A.2d 703 (Pa. Super. 2007).

Person Not to Possess

The Defendant asserts that his conviction as a Person not to Possess a Firearm was not proven by sufficient evidence and was against the weight of the evidence presented. The crime of Persons Not to Possess Firearms is defined in pertinent part as follows: a person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth ... shall not possess, use, control, sell, transfer or manufacture ... a firearm in this Commonwealth. 18 Pa.C.S.A. § 6105(a)(1). While the Defendant is correct that no witnesses saw him with a gun or saw him shoot a gun, and that he was not found with a gun in his possession, there was sufficient circumstantial evidence for this court to have found that he possessed a gun that night.

Both Ms. Kaduck and Alexis testified that, within seconds of going into the house, while the Defendant was outside the home, they heard four (4) or five (5) loud noises, consistent with gunshots. (T.R. 10/24/13, pp. 14-15, 31, 34-35). Additionally, the Kaduck's neighbor, Jenaya Mebane, testified that she also heard four (4) or five (5) sounds that she thought sounded like firecrackers, but which were consistent with the sound of gunshots. (T.R. 10/24/13, pp. 59, 62-63). Responding officers found that Ms. Kaduck's car had been shot at least six (6) times, and the evidence was uncontroverted that the vehicle had been riddled with bullets (T.R. 10/24/13, p. 70). Additionally, there

7

was credible testimony from both Carrie Kaduck and Alexis Kaduck that, at the time of this incident, the street was otherwise quiet, with no one else outside. (T.R. 10/24/13, pp. 15, 30).

Although this court relied on circumstantial evidence when it found the Defendant guilty on this count, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Baker, *supra*, at 658. Here, the Commonwealth sought to prove that the Defendant had constructive possession of a weapon, as a gun was never found on the Defendant or recovered at or near the crime scene. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not, and it may be established by the totality of the circumstances. Com. v. Parker, 847 A.2d 745, 750 (Pa. Super. 2004).

This court did not, and does not, have any doubt that the Defendant was in possession of a gun that night and that he fired it at and into Ms. Kaduck's car. The only person on the street in the area of the Kaduck's vehicle within seconds of Ms. Kaduck and Alexis returning inside the home was the Defendant. There was no evidence presented of another person or vehicle passing by the home in the mere seconds between Ms. Kaduck closing the door and the sound of gunshots. The Defendant was angry at both Kaducks, and was standing right next to the vehicle immediately before it was destroyed by gunfire. This is not a situation where the court speculated or guessed at what occurred. It is simply the application of strong and

8

compelling circumstantial evidence which compels the guilty verdict. While this court certainly would have preferred that there be physical evidence in the form of a positive gunshot residue test, or the recovery of the weapon near the scene of the crime or the location of the Defendant's apprehension, this court based its verdict on the evidence as presented. Based on all of that evidence, and the reasonable inferences to be drawn from the evidence, this court correctly found the Defendant guilty of the Person Not to Possess charge.

### Terroristic Threats

The Defendant asserts that the statement made by the Defendant to Ms. Carrie Kaduck was not serious enough to constitute a terroristic threat. A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another. 18 Pa. C.S. A. §2706. To meet its burden of proof, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Com. v. Reynolds, 835 A.2d 720, 730 (Pa. Super. 2003). Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Id. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. Id.

9

Ms. Carrie Kaduck testified that the Defendant told her, "Okay, snitch, I have something for you," when he became aware that she was on the phone with 911. (T.R. 10/24/13, pp. 17, 31). The Defendant made this statement to Ms. Kaduck after throwing a phone at her wall hard enough to put a hole in the wall, after smashing her daughter's cell phone with his foot, after firing shots into her car and after forcibly breaking into her home, damaging her back door in the process. To suggest that the Defendant's statement was anything less than a threat, when coupled with his violent conduct that preceded the statement, is disingenuous and ignores the totality of the circumstances and the context in which the threat was made. Although the Defendant now maintains that his subsequent action of throwing a flower pot was not of a serious or threatening nature, this court viewed his statement as a clear threat of violence intended to terrorize Ms. Kaduck and her family. This court found the testimony regarding the threat made and the fear that it caused to be credible, and its conviction on this charge should be upheld.

This court's verdict was supported by sufficient evidence to sustain convictions on both the charges of Person Not to Possess and Terroristic Threats. Additionally, the great weight of the evidence, including inferences to be drawn from that evidence, support this court's conviction of the Defendant on these charges. This court's verdict and sentencing should be upheld.

BY THE COURT:

_____ , J.
Beth A. Lazzara, Judge

_____
7/22/14
Date

11