J-S07040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SEZAN HESSOU, | : | |
| | : | |
| Appellant | : | No. 679 MDA 2016 |

Appeal from the Judgment of Sentence January 27, 2016
in the Court of Common Pleas of Dauphin County,
Criminal Division, No(s): CP-22-CR-0005099-2014

BEFORE:  BOWES, LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED MARCH 30, 2017**

Sezan Hessou ("Hessou") appeals from the judgment of sentence imposed following his c

In its Opinion, the trial court set forth the relevant factual and

procedural background of this case, which we adopt for the purpose of this

appeal.  **See** Trial Court Opinion, 6/17/16, at 1-9.

On appeal, Hessou raises the following issues for our review:

1. Whether the trial court erred in denying [Hessou's] post-sentence Motion[,] where the finding of guilt was against the weight of the evidence so as to shock one's sense of justice[,] where the Commonwealth never showed that [Hessou] was under the combined influence of alcohol and a drug or drugs[,] nor to a degree that rendered him incapable of safe driving?

2. Whether the Commonwealth failed to present sufficient evidence to sustain [Hessou's] convictions[,] where the Commonwealth did not prove that [Hessou] was under the influence of alcohol and a drug or drugs[,] rendering him incapable of safe driving?

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), (d)(2), 3714(a).

Brief for Appellant at 7 (issues renumbered for ease of disposition, some capitalization omitted).

In his first issue, Hessou contends that his "conviction was against the weight of the evidence[,] where the testimony showed that [he] never left his lane of travel, passed the one[-]legged stand field sobriety test[,] and blew a .073 [percent] result on the preliminary breath test ("PBT")." *Id*. at 20-21. Hessou asserts that "[a] .073 percent reading on a [PBT] is below the permissible blood alcohol level for a tier one (1), general impairment [DUI] charge." *Id*. at 21.

In its Opinion, the trial court addressed Hessou's first issue, set forth the relevant law, and concluded that the issue lacks merit. *See* Trial Court Opinion, 6/17/16, at 9-11. We agree with the reasoning of the trial court, and affirm on this basis as to Hessou's first issue. *See id*.; *see also id*. at 5-9 (wherein the trial court set forth, in detail, the evidence supporting Hessou's convictions).

In his second issue, Hessou challenges the sufficiency of the evidence underlying his convictions. Brief for Appellant at 17-19.

Hessou failed to raise this claim in his Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived); *see*

*also* Pa.R.A.P. 1925(b) (providing that "[a] failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of."). Because Hessou did not raise this issue in his Concise Statement, he failed to preserve it for our review.[2]

Judgement of sentence affirmed.

---

[2] Although the issue was not raised by Hessou, we are mindful that his refusal to submit to a blood alcohol test, following his arrest for driving under the influence, could implicate the recent United States Supreme Court holding in ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016). In ***Birchfield***, the Supreme Court concluded that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." ***Id***. at 2185. Additionally, the Supreme Court held that blood tests taken pursuant to implied consent laws are an unconstitutional invasion of privacy. ***Id.*** at 2186. The Supreme Court stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." ***Id.***; ***see also id.*** (concluding that the petitioner could not be convicted of refusing a warrantless blood draw following an arrest for driving under the influence). Here, the trial court sentenced Hessou on his conviction under 75 Pa.C.S.A. § 3802(d)(3) (driving under the influence of alcohol - combination of alcohol and drugs), which triggered the imposition of penalties under 75 Pa.C.S.A. § 3804(c)(1). Notably, the penalties provided by section 3804(c)(1) are also triggered when a defendant is convicted of section 3802(a)(1) (driving under the influence of alcohol – general impairment), *and the defendant refuses to consent to a blood or breath test*. Thus, ***Birchfield*** is implicated when a defendant is convicted under section 3802(a)(1), and penalties are imposed under section 3804(c)(1) based on a refusal to submit to a blood alcohol test. However, as Hessou was sentenced under section 3804(c)(1) solely based on his conviction under section 3802(d)(3), ***Birchfield*** is not implicated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
                                      :   DAUPHIN COUNTY, PENNSYLVANIA

          v.                     :

                                     :   NO. 679 MDA 2016

SEZAN P. HESSOU,                 :
          Defendant           :   TRIAL COURT NO. 5099 CR 2014

## OPINION
### [Pursuant to Pa. R.A.P. 1925(a)]

Presently before the Superior Court of Pennsylvania is the appeal of Sezan P. Hessou (hereinafter "Defendant" or "Appellant") from our Order of April 11, 2016 denying his Amended Post-Sentence Motion.

## PROCEDURAL HISTORY

On May 29, 2014, Defendant was charged with the following:

- Count One (1) – Driving Under the Influence ("DUI"): General – 1st Offense[1];

- Count Two (2) – DUI: Controlled Substance – Impaired Ability – 1st Offense[2];

- Count Three (3) – DUI: Controlled Substance – Combination Drugs/Alcohol – 1st Offense[3];

- Count Four (4) – Marijuana Small Amount Personal Use[4];

- Count Five (5) – Use/Possession of Drug Paraphernalia[5];

- Count Six (6) – Driving Without a License[6];

- Count Seven (7) – Careless Driving[7]; and

- Count Eight (8) – No Headlights[8].

---

[1] 75 Pa.C.S.A. § 3802(a)(1).
[2] 75 Pa.C.S.A. § 3802(d)(2).
[3] 75 Pa.C.S.A. § 3802(d)(3).
[4] 35 Pa.C.S.A. § 780-113(a)(31)(1).
[5] 35 Pa.C.S.A. § 780-113(a)(32).
[6] 75 Pa.C.S.A. § 1501(a).
[7] 75 Pa.C.S.A. § 3714(a).
[8] 75 Pa.C.S.A. § 4303(a).

On June 12, 2015, Defendant, through counsel, filed an Omnibus Pretrial Motion to Suppress. A suppression hearing was held before the Honorable Richard A. Lewis on July 8, 2015.[9] At the conclusion of the hearing, President Judge Lewis denied Defendant's Motion to Suppress, and listed the case for the August 17, 2015 trial term.

Defendant was scheduled for a bench trial before the Honorable William T. Tully on August 21, 2015. After failing to appear, this Court issued a bench warrant and granted the Commonwealth's request to proceed with the bench trial in absentia. With regard to Defendant's failure to appear, defense counsel stated the following:

> I received a voicemail from an unknown female advising me that she was a friend of his and that he was in the emergency department. She did not leave a name, she did not tell me where. I was not able to reach anyone when I returned the number.
> My secretary did – I had my secretary call all the emergency departments in the area, actually five of them. From what she was told he has not been admitted or a patient at any of them.

(Notes of Testimony, Bench Trial 8/21/15 at p. 4).

In addition, defense counsel stated that Defendant was notified of the August 21, 2015 bench trial one (1) week prior at the conclusion of his jury trial on docket number CP-22-CR-6480-2014. Therefore, the bench trial continued without Defendant present.

At the conclusion of the bench trial, this Court found Defendant guilty on Counts 3, 4 and 6, and not guilty on Counts 1, 2, 7, and 8. Count 5 was withdrawn by the Commonwealth. On August 28, 2015, Defendant, through counsel, filed a Motion to Lift Capias stating that he failed to appear because he was being treated at PinnacleHealth Emergency Services at the time. Defendant attached medical documentation to support

---

[9] During the August 21, 2015 bench trial, counsel entered the transcript from the Suppression Hearing as Commonwealth's Exhibit 1, and stipulated that the Court could incorporate that testimony in reaching a verdict at the bench trial.

his position. This Court lifted the capias and scheduled sentencing for September 15, 2015. Defendant again failed to appear for court on September 15, 2015 and a bench warrant was issued. The bench warrant was returned on October 28, 2015 as Defendant was found to be incarcerated in the York County Prison.

On October 30, 2015, a Rule 150 hearing was held before this Court. Bail was set at $2,500 unsecured with pretrial services, and sentencing was scheduled for December 16, 2015, which was subsequently continued to January 6, 2016. Following a discussion on the record between counsel, Defendant and the Court on January 6, 2016, sentencing was again continued to January 27, 2016.[10]

Defendant filed a Motion in Arrest of Judgment and New Trial on January 19, 2016. In his Motion, Defendant argues that he was unavailable for trial on August 21, 2015 due to medical reasons, and provided medical records to support his position. Prior to the commencement of sentencing on January 27, 2016, the Court heard testimony and argument on Defendant's Motion for Arrest of Judgment and New Trial. [11] After reviewing the medical records provided, the Court was concerned that it may not have been a good faith medical visit since Defendant left the hospital before being medically discharged, and contradicted himself on at least two (2) occasions stating at one point he was having shortness of breath and another he was not. After hearing Defendant's explanation for failing to appear on direct, and giving the Commonwealth an opportunity to cross-examine, this Court denied Defendant's Motion for a New Trial.

On January 27, 2016, Defendant was sentenced as follows:

---

[10] See Notes of Testimony, Sentencing 1/6/16.
[11] See Notes of Testimony, Sentencing, 1/27/16 at 3-19.

- Count 1 – merged with Count 3;[12]

- Count 2 – merged with Count 3;

- Count 3 – seventy-two (72) hours to six (6) months incarceration at Dauphin County Prison with time credit for three (3) days in which Defendant spent in York County Prison;

- Count 4 – thirty (30) days of probation concurrent with Count 3;

- Count 5 – withdrawn by the Commonwealth;

- Count 6 – no further sentence;

- Count 7 – merged with Count 3; and

- Count 8 – merged with Count 3.

Defendant filed a Post-Sentence Motion on February 5, 2016, and subsequently filed an Amended Post-Sentence Motion on February 8, 2016. The Commonwealth filed a response to Defendant's Amended Post-Sentence Motion on February 17, 2016. On April 11, 2016, this Court denied Defendant's Amended Post-Sentence Motion. Defendant filed a Notice of Appeal on April 22, 2016. On April 27, 2016, Defendant was directed to file a Concise Statement of Errors Complained of on Appeal (hereinafter "Statement").

**Appellant's Statements of Errors Complained of on Appeal**

Appellant alleges the following errors:

1. The trial court erred in denying Appellant's Post-Sentence Motion as the verdict was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth failed to prove beyond a reasonable doubt that Petitioner was under the influence of a drug, alcohol, or a combination of both when he operated his vehicle and the Commonwealth failed to prove that Petitioner was unable to drive safely for reasons including, but not limited to, video that is contradictory to the officer's testimony, Petitioner's vehicle did

---

[12] The Court notes that there is a discrepancy between the transcript and the docket entries. Appellant was found not guilty on Counts 1 and 2 and should not have been sentenced. As there was no additional sentence for Counts 1 and 2, it is a harmless error.

not leave the lane of travel for approximately two miles, the PBT reading of .073 percent, et al.[13]

2. The trial court abused its discretion in sentencing Appellant to seventy two (72) hours to six (6) months in Dauphin County Prison where the sentence was excessive and unreasonable constituting too severe a punishment in light of the rehabilitative needs of the defendant, what is necessary to protect the public, and where the punitive measures inherent in this sentencing schemed could have been accomplished with the imposition of a lesser sentence as the offenses are ungraded misdemeanors and summaries.

(Statement of Errors, May 18, 2016).

## FACTUAL BACKGROUND

On May 17, 2014, Trooper Erik Cummings (hereinafter "Trooper Cummings") was on routine patrol in a marked police vehicle and fully uniformed. (Notes of Testimony, Bench Trial 8/21/15 ("N.T. Bench Trial") at 8). At approximately 1:09 A.M., he attempted to merge onto State Route 322, SR/22 eastbound towards Harrisburg at the Watts exit[14] when he observed a vehicle travelling eastbound with a non-functioning driver's side headlight. (N.T. Bench Trial at 8-9). Trooper Cummings testified that he observed the headlight to be completely out. (Notes of Testimony, Suppression Hearing 7/8/15 ("N.T. Suppression") at 8). Appellant was later identified to be the individual driving the vehicle. (N.T. Suppression at 10). Trooper Cummings then slowed his vehicle down in an attempt to get behind Appellant's vehicle. (N.T. Bench Trial at 9). Appellant also slowed down causing Trooper Cummings to slow down even more until he eventually slowed to approximately fifteen (15) to twenty (20) miles per hour before the vehicle passed his and he was able to get behind it. (Id.)

---

[13] While Appellant asserts a challenge to the weight of the evidence, he improperly uses the standard for a sufficiency of evidence challenge as support for his position. This Court will treat it as a challenge to the weight of the evidence.

[14] The on-ramp merges from left to right merging into the fast lane as opposed to most other on-ramps. (N.T. Bench Trial at 8).

Before initiating the traffic stop, Trooper Cummings followed Appellant for approximately two (2) miles observing the vehicle's movements, as well as running a check of the license plate. (N.T. Suppression at 12; N.T. Bench Trial at 10). He testified that he always performs a check of the vehicle prior to initiating a traffic stop so that he has an idea as to who may be driving the vehicle. (N.T. Suppression at 12). While following, Trooper Cummings observed Appellant's vehicle engage in an abrupt swerve within the lane of travel. (N.T. Suppression at 12; N.T. Bench Trial at 10). Thereafter, Trooper Cummings initiated the traffic stop for the non-functioning headlight. (N.T. Suppression at 14). After slight hesitation, Appellant pulled over and stopped, and when Trooper Cummings exited his vehicle he noticed the reverse lights activate on Appellant's vehicle, and stay activated for approximately six (6) seconds before the vehicle was placed in park. (N.T. Bench Trial at 11).

When Trooper Cummings approached the vehicle, he informed Appellant as to why he pulled him over, and asked for his driver's license and registration. (N.T. Suppression at 25). Appellant handed Trooper Cummings a driver's license and an expired registration, Trooper Cummings handed back the expired registration and asked for a valid one, Appellant then handed Trooper Cummings his emissions test, to which he replied that he needed a registration not an emissions test. (N.T. Suppression at 38-39; N.T. Bench Trial at 17). Trooper Cummings testified that Appellant struggled with providing the correct documents. (Id.) After running a check of Appellant's driver's license, Trooper Cummings learned that it was expired. (N.T. Bench Trial at 18).

Upon approaching the vehicle, Trooper Cummings observed that Appellant could barely open his eyes, was covered in sweat with what appeared to be blonde hair stuck

to his face and arms, and spoke very slowly. (N.T. Bench Trial at 12; N.T. Suppression at 26). Further, he testified that Appellant seemed very lethargic, had dilated pupils, and that he could smell the odor of alcohol on Appellant's breath. (N.T. Bench Trial at 13). When questioned, Appellant admitted that he had one (1) alcoholic beverage at some point prior to driving. (N.T. Bench Trial at 13-14).

At that point, Trooper Cummings believed Appellant was under the influence of alcohol or a controlled substance or a combination of both, and asked Appellant to step out of the vehicle and submit to field sobriety tests. (N.T. Bench Trial at 13-14). He also asked Appellant if there was anything in the vehicle that he needed to be concerned with, and Appellant replied no and consented to a search of the vehicle. (N.T. Bench Trial at 14). Trooper Cummings administered the horizontal gaze nystagmus ("HGN"), walk and turn, and one-leg stand tests. (N.T. Suppression at 29). Appellant did poorly on the HGN and walk and turn tests, but did pass the one-leg test. (N.T. Suppression at 29-31). In the walk and turn test, Appellant missed heel to toe, stepped off the line, and raised his arms for balance. (N.T. Suppression at 31).

Following the field sobriety test, Trooper Cummings administered a preliminary breath test ("PBT") which showed a .073 percent result. (N.T. Suppression at 32). Appellant admitted he had one alcoholic beverage, but did not state how long prior to driving. (N.T. Suppression at 32; N.T. Benchn Trial at 13-14). Appellant denied using any controlled substance. (Id.) After conducting the field sobriety tests and administering the PBT, Trooper Cummings placed Appellant under arrest for DUI. (N.T. Suppression at 33). A search incident to arrest of Appellant's person revealed a small metal pipe with steel wool in the end of it, which is known to Trooper Cummings to be

drug paraphernalia through his experience and training. (N.T. Suppression at 35-37; N.T. Bench Trial at 19). A subsequent lab test of the metal pipe indicated that it contained cocaine residue. (N.T. Bench Trial at 22). A search of Appellant's vehicle revealed a metal tin with a green leafy substance that was later identified by the lab as marijuana. (N.T. Suppression at 35; N.T. Bench Trial at 20, 22). He also found a bottle that smelled like it contained alcohol. (N.T. Bench Trial at 26). Trooper Cummings dumped the liquid on the side of the road and put the empty bottle back in Appellant's vehicle. (N.T. Bench Trial at 27).

Thereafter, Appellant was transported to the Pennsylvania State Police ("PSP") barracks in Newport where Trooper Cummings asked Appellant to do a blood draw and administered the O'Connell warning. (N.T. Suppression at 33; N.T. Bench Trial at 23). Trooper Cummings informed Appellant that if he refused to sign the DL-26 form or refuse the blood test, his license would be automatically suspended for up to a year by PennDOT. (N.T. Suppression at 33). Appellant responded that he did not believe Trooper Cummings had enough evidence to arrest him. (N.T. Suppression at 33-34). Trooper Cummings reiterated to Appellant that no matter what, he will lose his license if he refuses to submit to a blood test. (N.T. Suppression at 33; N.T. Bench Trial at 25). Appellant ultimately refused the blood test and signed the appropriate area on the DL-26 form. (N.T. Suppression at 35; N.T. Bench Trial at 23-24).

Upon release from custody, Appellant was transported to his friend's house and informed that he was free to leave and would receive paperwork in the mail. (N.T. Bench Trial at 25). Trooper Cummings testified to the following interaction between him and Appellant upon his release:

> And he asked, Well, why was I arrested?
> And I said, You were arrested for DUI.
> And he said, but I wasn't drunk. I didn't drink that much.
> I said, Well I don't believe it was just alcohol. I believe that you had some sort of drug or narcotic in your system too.
> And he said, I just smoked a little bit of cocaine.

(N.T. Bench Trial at 25-26).

## DISCUSSION

### A. THE GUILTY VERDICTS WERE NOT CONTRARY TO THE WEIGHT OF THE EVIDENCE.

On appeal, Appellant alleges that this Court erred in denying his Amended Post-Sentence Motion because the verdict was against the weight of the evidence. Specifically, he argues that the Commonwealth failed to prove that Appellant was under the influence of a drug, alcohol, or combination of both when he operated his vehicle, and failed to prove he was unable to drive safely.

It is well established that:

> A true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but questions which evidence is to be believed. An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since [the appellate court's] examination is confined to the "cold record" [and] may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

Commonwealth v. Galindes, 786 A.2d 1004, 1011 (Pa. 2001) (internal citations omitted). In reviewing the trial court's denial of a motion for a new trial based upon a challenge to the weight of the evidence, the appellate court will give "the gravest consideration to the findings and reasons advanced by the trial judge."[15]

---

[15] Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

In the instant case, the evidence supports the guilty verdicts of DUI. As cited at length above, the evidence shows that Trooper Cummings first noticed a vehicle driving with a non-functioning driver's side headlight. Prior to conducting the traffic stop, Appellant intentionally slowed the speed of his vehicle in an attempt to avoid Trooper Cummings from following his vehicle. While following Appellant's vehicle, Trooper Cummings observed Appellant make an abrupt swerve, but admitted Appellant's vehicle did not leave the lane of travel in doing so. Upon initiating the traffic stop, Trooper Cummings observed Appellant's eyes to be barely open, he had slurred speech, he was lethargic, he had dilated pupils, his breath smelled of alcohol, and he was very sweaty. Appellant also had difficulty providing his driver's license and registration. It was later learned that Appellant's driver's license and registration were expired. In addition, Appellant did poorly on two (2) of the three (3) field sobriety tests. Based upon the totality of the circumstances, Trooper Cummings had probable cause to believe that Appellant was driving under the influence of alcohol, a controlled substance, or a combination of both.

Prior to the field sobriety tests, Appellant gave Trooper Cummings consent to search his vehicle. However, it was not until after Appellant was arrested that his vehicle and person were search. A search incident to arrest revealed a metal pipe with steel wool at the end, which Trooper Cummings testified that based upon his experience and training, is known to be drug paraphernalia. A subsequent lab tested indicated the pipe had cocaine residue on it. In the vehicle Trooper Cummings found a bottle of what he believes contained an alcoholic beverage and a tin that contained a

leafy substance later confirmed to be marijuana. Further, upon being released from custody, Appellant admitted to Trooper Cummings that he smoked some cocaine.

Accordingly, this Court did not err in denying Appellant's Amended Post-Sentence Motion as the evidence supported the verdict, and the verdict was not contrary to the weight of the evidence so as to shock the conscience of the Court.

## B. THE SENTENCE IS REASONABLE AND DOES NOT CONSTITUTE TOO SEVERE A PUNISHMENT.

Appellant also contends that this Court abused its discretion in sentencing Appellant to seventy-two (72) hours to six (6) months in Dauphin County Prison because the sentence is excessive and unreasonable constituting too severe a punishment. Appellant was sentenced on Count Three (3) - DUI: Controlled Substance – Combination Drugs/Alcohol – 1st Offense pursuant to 75 Pa.C.S.A. § 3802(d)(3). The statutory section regarding penalties for DUI reads:

> (c) Incapacity; highest blood alcohol; controlled substance –. An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:
>
> > (1) For a first offense, to:
> >
> > > (i) undergo imprisonment of not less than 72 consecutive hours.
>
> \* \* \*
>
> (g) Sentencing guidelines – The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory penalties of this section.

75 Pa.C.S.A. § 3804.

This Court sentenced Appellant to the mandatory minimum of not less than seventy-two (72) hours of imprisonment and Dauphin County Prison. Under the statute,

this Court did not have the discretion to sentence Appellant to anything below that. Appellant was also given time credit for three (3) days that he spent in York County Prison. As a result, Appellant did not serve any period of imprisonment in Dauphin County Prison on this sentence, and was immediately paroled.

Based upon the history of the case, Appellant's failure to appear on more than one occasion, the lack of a credible reason for Appellant's absence, the evidence presented at the bench trial, and Appellant's overall criminal history, this Court was more than fair in sentencing Appellant.

Accordingly, we ask the Superior Court of Pennsylvania to affirm the Order of April 11, 2016 denying Appellant's Amended Post-Sentence Motions, and dismiss the appeal in this matter.

Date: 6/16/16

Respectfully submitted:

**William T. Tully, J.**

DISTRIBUTION:
Abby N. Trovinger, Esquire – District Attorney's Office
Ashley D. Martin, Esquire – Public Defender's Office
Clerk of Courts
Court Administration
FILE

Page **12** of 12