J-S58031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHAUNCY K. SHIELDS | : | |
| | : | |
| Appellant | : | No. 1812 MDA 2016 |

Appeal from the Judgment of Sentence October 4, 2016
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0002938-2015

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED OCTOBER 10, 2017**

Appellant, Chauncy K. Shields, appeals from the judgment of sentence entered in the Cumberland County Court of Common Pleas, following his jury trial convictions for two (2) counts of possession with intent to deliver a controlled substance ("PWID"), two (2) counts of possession of drug paraphernalia, and two (2) counts of criminal use of a communication facility.[1]  We affirm.

The trial court's opinion fully set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

---

[1]  35 P.S. § 780-113(a)(30) and (a)(32); 18 Pa.C.S.A. § 7512(a), respectively.

Appellant raises three issues for our review:

> DID THE COURT ERR WHEN IT CONCLUDED THAT APPELLANT'S SENTENCE WAS NOT EXCESSIVE BECAUSE IT WAS WITHIN THE STANDARD RANGE FOR SENTENCING?
>
> DID THE COURT ERR WHEN IT CONCLUDED THAT THE EVIDENCE PROVIDED BY THE COMMONWEALTH WAS SUFFICIENT FOR THE JURY TO FIND...APPELLANT GUILTY OF THE CHARGES AGAINST HIM?
>
> DID THE COURT ERR WHEN IT CONCLUDED THAT THE JURY VERDICT WAS NOT SO CONTRARY TO THE EVIDENCE AS TO SHOCK ONE'S SENSE OF JUSTICE?

(Appellant's Brief at 7).[2]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Merle L. Ebert, Jr., we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed January 11, 2017, at 6-15) (finding: **(1)** Appellant's sentences were within standard range of sentencing guidelines; court had benefit of presentence investigation ("PSI") report and

_____

[2] Appellant failed to include a Pa.R.A.P. 2119(f) statement in his appellate brief, but the Commonwealth did not object. **See Commonwealth v. Robertson**, 874 A.2d 1200, 1211 (Pa.Super. 2005) (stating when defendant fails to include a Rule 2119(f) statement in appellate brief, and Commonwealth has not objected, this Court can overlook omission and review issue if substantial question is evident from appellate brief). **But see Commonwealth v. McNear**, 852 A.2d 401, 408 (Pa.Super. 2004) (concluding sentencing issue is waived when defendant does not include Rule 2119(f) statement in appellate brief, and Commonwealth properly objects to omission).

commentary from counsel and Appellant when it sentenced Appellant; PSI report indicated Appellant had prior record score of 5 and lengthy and recent criminal history, including guilty plea to felonies in 2011 and 2012; Appellant committed current offenses while on state parole; court sentenced Appellant on each count to standard range sentence based on his prior record score; court would have been justified in imposing aggravated range sentence, because Appellant committed offenses less than 100 days after he was released from prison; when it sentenced Appellant, court considered PSI report, Appellant's background, need to protect public, gravity of offenses, and Appellant's rehabilitative needs; court did not have to state reasons for deviating from the absolute bottom of standard range when imposing Appellant's sentence;[3] **(2)** evidence demonstrated that on April 14, 2015, and April 15, 2015, Appellant met CI and gave CI crack cocaine in exchange for money; CI testified she knew Appellant as drug dealer; CI testified she had used heroin and crack cocaine before she became informant; undercover officers observed Appellant meet with CI on April 14, 2015, and

---

[3] The law does not require the sentencing court to echo the words of the Sentencing Code, reciting every factor under Section 9721(b); instead, the record as a whole must reflect the court's consideration of the statutory factors in light of the facts of the offenses and the offender's character. *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa.Super. 2009), *appeal denied*, 604 Pa. 706, 987 A.2d 161 (2009) (reiterating sentencing court can satisfy requirement to place on record reasons for imposing particular sentence by indicating court has considered PSI and weighed all relevant statutory factors).

April 15, 2015; after meetings, CI provided police with baggies containing substance, which Appellant stipulated was cocaine; police found no other substance when they searched CI and her vehicle before and after transactions; CI called same telephone number immediately before each transaction to set up deals and both times she spoke with same person whom she identified as Appellant; Appellant was identified as individual who arrived to carry out drug transactions; jury could reasonably infer that CI called Appellant and arranged purchase of crack cocaine from him; evidence was sufficient for jury to convict Appellant of charges; **(3)** jury was able to evaluate credibility of all witnesses and to weigh evidence; testimony and evidence summarized in discussion of Appellant's sufficiency claim showed CI called Appellant on two separate occasions, arranged to meet with him to buy cocaine, and met and bought cocaine from him twice; verdict was not against weight of evidence).  Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017

- 4 -

COMMONWEALTH

v.

CHAUNCY K. SHIELDS
OTN: T7090996

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
: CP – 21 – CR – 2938 – 2015
:
: CHARGES: (1) UNLAWFUL DELIVERY,
:         MANUFACTURE,
:         POSSESSION WITH INTENT
:         TO DELIVER A SCHEDULE II
:         CONTROLLED SUBSTANCE –
:         COCAINE (2 COUNTS)
:      (2) CRIMINAL USE OF
:         COMMUNICATION FACILITY
:         (2 COUNTS)
:      (4) UNLAWFUL POSSESSION
:         OF DRUG PARAPHERNALIA
:         (2 COUNTS)
:
: AFFIANT: CPL. KEITH R. SEIBERT

## IN RE: OPINION PURSUANT TO PA. R.A.P. 1925(a)

**Ebert, J., January 11, 2017 –**

In this post-sentence appeal, Appellant challenges the sentence imposed upon

him and the weight and sufficiency of the evidence. This opinion is written pursuant to

Pa. R.A.P. 1925(a). Appellant's Concise Statements of the Errors Complained of on

Appeal, which he provided in narrative form, reads as follows:

> The Defendant was sentenced to an aggregate state
> sentence of 3-8 years on two deliveries of crack cocaine to a
> friend working as a Confidential Informant ("Informant") with
> the Drug Task Force, with weights of .59 grams and .14
> grams, respectively via use of cellular telephones on both
> occasions. The drug paraphernalia counts were costs only.
>
> While the individual sentences are within the standard
> ranges of the sentencing guidelines they are each at the
> uppermost point of the standard range only three months
> shy of the aggravated range without explanation or reasons

JAN 1 1 2017
Copies mailed on _____
1

Copies delivered on _____
JAN 1 1 2017

given and are excessive based on the record. Most of Defendant's convictions resulting in his prior record score of 5 occurred between 2001 and 2003, i.e., 12-15 years ago.

Further, The evidence at trial was substantially based on the suspect testimony of the Informant, an admitted drug user with a faulty memory, and lacking in any other proof except one surveillance photograph, which showed Defendant exiting a Burger King restaurant holding a Burger King bag in a Burger King parking lot, which would have contained a hamburger if Defendant had been stopped and detained right then. Instead, he was arrested at a later date.

Consequently, the verdicts were against the weight and sufficiency of the evidence for the following reasons:

1. The Defendant was not the target of any police narcotics investigation.

2. The Defendant's name as a drug seller and the nickname "DQ" originated from the police civilian witness ("Informant"), an arrested and known heroin user that police squeezed information from and forced her to tell them a name of "who can you get drugs from right now, today?".

3. It is alleged that the Defendant's cell phone was called twice to set up drug deals, but neither the cell phone carrier nor the owner of the cell number allegedly dialed were admitted into evidence.

4. The police never spoke to the Defendant on the telephone, but only claim they overheard the other party had a "male voice".

5. A car was driven to the alleged drug deals with the Informant, but no license or ownership information was ever introduced at trial and the vehicle owner could have been the "DQ" referred to at trial and setting up deals on the phone casting doubt upon the Defendant as the perpetrator.

6. In fact, there was another male in the car referred to in the Burger King parking lot.

2

7. The alleged transactions were not "controlled buys" as no marked money was used by police.

8. The alleged seller was never stopped and detained at the scene of the alleged buys to determine if he had the buy money or any cocaine or residue in his possession.

9. There was no fingerprint evidence to identify the perpetrator.

10. The police and Informant both testified the Informant was a heroin user at the time of the alleged drug deals, yet the two buys were set up over the telephone for purchases of crack cocaine; if the Informant and the Defendant truly knew each other as testified to, the Defendant would have known the Informant was a heroin user and clearly would have been suspicious by the request for crack cocaine.

11. There was no corroborating physical evidence of either alleged drug deal or the parties involved.

12. Finally, at best, the riddled-with-holes prosecution might support arguendo that Defendant was a "runner", but even that scenario is not proven beyond a reasonable doubt on the trial record.

## Statement of Facts

On April 13, 2015, officers of the Cumberland County Drug Task Force made arrangements to use the services of a Confidential Informant (hereinafter "CI"), for the purpose of performing controlled purchases of illegal narcotics.[1] When asked to identify individuals that the CI knew could provide illegal narcotics to her, the CI identified Appellant, among others.[2] The CI identified Appellant as a drug dealer operating under

---

[1] Notes of Testimony, In Re: Trial, September 20, 2016 at 73 (hereinafter, N.T. Trial Day 2 __).

[2] Notes of Testimony, In Re: Trial, September 19, 2016 at 23 (hereinafter, N.T. Trial Day 1 __).

3

the street name of "DQ."[3] At the time, Appellant was not under investigation by the Drug Task Force,[4] and the police did not provide Appellant's name to the CI as a suggested drug dealer or person of interest.[5] On April 14, 2015, and April 15, 2015, the CI called a telephone number that she identified as Appellant's, in order to set up drug deals for the purchase of crack cocaine.[6] Both times, the CI spoke to an individual she identified as Appellant while arranging the drug purchases.[7]

On April 14, 2015, Appellant agreed to meet CI in the parking lot of the local Burger King restaurant. Appellant was photographed arriving at the scene and entering the CI's vehicle.[8] While inside the vehicle, Appellant provided the CI with crack cocaine in exchange for $100.00 in official funds.[9] Appellant was not arrested at that time, based on a strategic decision made by those members of the Drug Task Force present at the scene.[10]

On April 15, 2015, Appellant again agreed to meet CI, for the purpose of selling her crack cocaine. This meeting, originally scheduled for the parking lot of a local gas station, had its location altered at the last moment, and occurred on the side of the

---

[3] N.T. Trial Day 1 at 21.

[4] N.T. Trial Day 2 at 120-121.

[5] Id. at 73

[6] N.T. Trial Day 1 at 22-23.

[7] Id at 29.

[8] N.T. Trial Day 2 at 53.

[9] Id. at 79.

[10] Id. at 133-134 (wherein Corporal Seibert explained that, when investigated drug dealers, for strategic reasons the Drug Task Force typically waits to arrange and carry out multiple drug buys before arresting the dealer).

4

road.[11] The CI picked up Appellant, drove around the block, and again purchased crack cocaine from Appellant in exchange for $50.00 of official funds.[12] While not photographed on this occasion, Appellant was observed inside the CI's vehicle and exiting the vehicle by Corporal Keith Seibert.[13] After both meetings, the CI immediately rendezvoused with members of the Drug Task Force,[14] and provided them substances that Appellant stipulated contained cocaine. The CI was searched prior to and after meeting Appellant, and no other illegal substances were found on her person or in her possession at any time.[15]

Ultimately, as a result of the investigation Appellant was arrested and charged with the instant offenses. After a continuance of arraignment on February 02, 2016, to allow Appellant to secure counsel, Appellant was arraigned on March 01, 2016. The pretrial conference was continued, at Appellant's request, from March 01, 2016, to May 04, 2016. The Commonwealth requested an unopposed continuance on May 16, 2016, and the matter was rescheduled for trial on July 11, 2016. Due to the unavailability of witnesses, the Commonwealth again moved to continue the trial date, over Appellant's objection. The trial date was rescheduled to September 19, 2016, and the trial was ultimately held on September 19, 2016, and September 20, 2016.

Appellant was tried on the above-captioned charges, and found guilty on all counts by a jury of his peers. On October 04, 2016, Appellant was sentenced. At Count

---

[11] N.T. Trial Day 1 at 31.

[12] N.T. Trial Day 2 at 86.

[13] Id. at 87-88.

[14] N.T. Trial Day 2 at 78, 103.

[15] Id. at 76-78, 82-83, 85, 103.

5

1, two counts of Unlawful Delivery of Cocaine, Defendant was sentenced on each count to imprisonment in a State Correctional Institute for not less than 18 months nor more than 5 years. On the charges at Count 2, two counts of Criminal Use of a Communication Facility, the Defendant was sentenced on each count to 18 months to 3 years to run concurrent to each other but consecutive to the sentence at Count 1. On Count 4, two counts of Unlawful Possession of Drug Paraphernalia, the Defendant was sentenced to only pay the costs of prosecution on each count. Accordingly, the aggregate sentence was three (3) years to eight (8) years. Appellant filed a timely motion to reconsider sentence on October 14, 2016, which was denied by Order of Court dated October 19, 2016. Appellant filed his Notice of Appeal on November 03, 2016, and his Concise Statement on November 23, 2016. Appellant, even though represented by counsel, also filed a *pro se* motion to modify or reconsider sentence, dated November 16, 2016, and filed of record on December 12, 2016.

## Discussion

Out of Appellant's lengthy statement of errors complained of on appeal, this court was able to discern three principle areas wherein Appellant alleges error. First, Appellant challenges the length of his standard-range sentence. Second, Appellant challenges the sufficiency of the evidence. Third, Appellant challenges the weight of the evidence. For the following reasons, this court should properly be affirmed on appeal.

i.    **The term of Appellant's sentence**

If an appellant's concise statement raises a substantial question that the sentence imposed is inappropriate under the sentencing code, the Superior Court will grant permission to appeal and will consider the merits of that appellant's arguments.

6

See Com. v. Malovich, 903 A.2d 1247, 1252 (Pa. Super. 2006). Generally, a substantial question is raised when a plausible claim is raised that the sentencing court's actions were inconsistent with a specific provision of the sentencing code or were contrary to the fundamental norms underlying the sentencing process. Id. (citing to Com. v. McAfee, 849 A.2d 270, 274 (Pa. Super. 2004)). A bald assertion of error is not accepted: rather, an appellant must support his assertions by articulating the way in which the court's actions violated the sentencing code. Id. (citing to Com. v. Mouzon, 812 A.2d 617, 627 (Pa. 2002)). However, the argument that a sentence is manifestly excessive can raise a substantial question. Com. v. Boyer, 856 A.2d 149, 152 (Pa. Super. 2004).

If appellate review is granted, the standard of review is that sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. See Malovich, supra at 1252. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. Id. at 1253. It is more than just an error in judgment. Id. A sentencing court must state on the record its reasons for imposing sentence: nevertheless, a lengthy discourse on sentencing philosophy is not required. Id. Where a sentence is within the standard range of the guidelines and the sentencing court enjoyed the benefit of a pre-sentence investigation, Pennsylvania law views the sentence as appropriate under the Sentencing Code. See Com. v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010).

When appellate review of a sentence is granted, the sentence shall be vacated and remanded if the appellate court finds:

7

1. The sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

2. The sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

3. The sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa. C.S. §9781. In the instant case, Appellant concedes that the sentence he received was within the guidelines,[16] removing prongs 1 and 3 from consideration.

With regard to prong 2, this court enjoyed the benefit of a presentence investigation.[17] Review of that presentence investigation revealed that Appellant has a prior record score of 5.[18] The presentence investigation also revealed that Appellant has a lengthy and recent criminal history, including guilty pleas to felony charges in 2011[19] and 2012,[20] despite Appellant's attempt to minimize his criminal background and portray his prior record as largely an unfortunate byproduct of the distant past.[21]

The standard range sentence on each charge of Unlawful Delivery of Cocaine for a defendant with a prior record score of 5 was a term of incarceration with a minimum duration of 12 to 18 months. Appellant was found guilty on two counts of that offense,

---

[16] See Appellant's Concise Statement of Errors Complained of on Appeal, at 2.

[17] See Notes of Testimony, In Re: Sentencing, held October 04, 2016, at 5 (hereinafter N.T. Sentencing __).

[18] See Appellant's Guideline Sentence Form.

[19] See Cumberland County Criminal Docket No. 2741-2010 (wherein Appellant pled guilty to a charge of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, an ungraded felony, on April 14, 2011).

[20] See Cumberland County Criminal Docket No. 1370-2012 (wherein Appellant pled guilty to a charge of Receiving Stolen Property, a felony of the second degree, on September 25, 2012).

[21] See Appellant's Concise Statement of Errors Complained of on Appeal, at 2.

8

and sentenced to two concurrent terms of 18 to 60 months of incarceration. Consecutive to that sentence was the sentence for Appellant's two convictions for Criminal Use of a Communication Facility. For a defendant with a prior record score of 5, the standard range sentence was, again, a minimum term of incarceration of 12 to 18 months. The sentences for the two counts of Criminal Use of a Communication facility were concurrent to each other, but consecutive to the sentence for Unlawful Delivery of Cocaine, giving Appellant a total term of incarceration of 3 to 8 years. This term of incarceration was exclusively within the standard range and was entered after review of Appellant's presentence investigation and consideration of both Appellant's background and the crimes Appellant was convicted of committing by the jury.

Appellant contends that this court erred by not putting on the record reasons or an explanation to support the specific standard range sentence imposed on him. In effect, Appellant is attempting to create a new requirement for entering a standard range sentence. Appellant contends that specific reasons which justify deviation from the absolute bottom of the standard range must be placed on the record at the time of sentencing. This interpretation is not grounded in any statutory authority or case law that this court is aware of. Instead, a sentence in the standard range of the sentencing guidelines, supported by a presentence investigation, is presumed proper. See Com. v. Moury, supra at 171.

Other than a bald allegation of excess sentencing Appellant raises no allegation that in this case a standard range sentence is manifestly unreasonable, or a product of partiality, prejudice, bias or ill-will. Appellant has a prior record score of 5, and was convicted of multiple felony offenses in the instant matter. This court enjoyed the benefit

9

of having a presentence investigation available, and reviewed that report in depth. As noted in the Presentence Report, the Defendant was sentenced by President Judge Edward Guido on September 25, 2012, for Recklessly Endangering Another Person (M2) [gun-related], Receiving Stolen Property (F2) [stolen gun] and Possession of Ecstasy. The Defendant was sentenced to a period of two to four years in a state correctional institute as noted in the Defendant's probation file. The Defendant was released from state prison on January 12, 2015.[22] Thus the Defendant was only out of state prison less than 100 days before committing these new crimes. This in and of itself would have justified an aggravated range sentence based on the fact that the Defendant committed these offenses while on state parole.

Appellant's sentence reflects the facts of this case as well as this court's consideration of his background, the need to protect the public, the gravity of the offenses as they relate to the community, and Appellant's rehabilitative needs. After those considerations, this court arrived at the conclusion that standard range sentences were appropriate. Therefore, this court should properly be affirmed on appeal.

## ii. The sufficiency of the evidence against Appellant

In the alternative, Appellant contends that there was insufficient evidence to sustain guilty verdicts against him for the charges he was convicted of. As stated by the Supreme Court:

> The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and

---

[22] Commonwealth of Pennsylvania Board of Probation and Parole letter to President Judge Edward Guido dated January 6, 2015.

10

inferences sufficient in law to prove guilt beyond a reasonable doubt.

Commonwealth v. Lovette, 450 A.2d 975, 977 (Pa. 1982).

Here, Appellant utterly disregards the requirement that all of the evidence be reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom. Rather, Appellant's contemptuous portrayal of the evidence could charitably be described as presented in the light most favorable to Appellant. Appellant cherry-picked testimony and evidence, such as pointing out that no fingerprint evidence identified the offender,[23] in order to make his case that there was insufficient evidence presented at trial to support convicting him of the above-captioned charges. This purported deficiency in the evidence, as an example, ignores the unrebutted testimony of Corporal Seibert, who stated that in his experience usable fingerprints generally cannot (and in this case, were not) be recovered from drug baggies.[24] Again, as an example of the points raised by Appellant, the jury was free to consider the credibility of Corporal Seibert as well as the lack of fingerprint evidence when determining whether the Commonwealth met its burden of proving Appellant guilty beyond a reasonable doubt.

Instead of Appellant's position, the evidence presented taken in the light most favorable to the Commonwealth demonstrated that on April 14, 2015, and April 15, 2015, Appellant met the CI, and gave the CI crack cocaine in exchange for a total of $150.00 over the course of two transactions. The CI testified that she knew Appellant principally as a drug dealer operating under the alias "DQ." The CI testified that she

---

[23] See Appellant's Concise Statement of Errors Complained of on Appeal, at ¶9.

[24] N.T. Trial Day 2 at 138-139.

11

used both heroin and crack cocaine prior to becoming an informant,[25] which is again relevant because Appellant argues that the evidence was insufficient because the CI did not use cocaine[26] and therefore Appellant, if he were a drug dealer, would have known something was amiss if CI asked him for cocaine. Appellant's argument on that point was simply not borne out by the record.

Undercover police officers observed Appellant meeting the CI on both April 14 and April 15, 2015, and after both meetings the CI provided police with baggies containing a substance that Appellant later stipulated contained cocaine. The CI and her vehicle were searched before and after the transactions, and no other contraband was located. The CI called the same telephone number immediately prior to each transaction to set up the deals, and spoke with an individual she identified as Appellant both times. Appellant was identified as the individual who arrived to carry out the drug transactions.[27] Thus, it would be reasonable for a jury to infer that the CI was able to call Appellant and arrange to purchase crack cocaine from him, have Appellant meet her in her vehicle after that call was made, and receive from Appellant a substance that Appellant stipulated at trial was tested and contained cocaine.[28] The Defendant attempted on cross examination to disparage the confidential informant as a known heroin and cocaine user. Unfortunately for the Defendant, this Court and the jury observed the confidential informant in person. She testified that she had been "clean"

---

[25] N.T. Trial Day 1 at 26, 40-41.

[26] See Appellant's Concise Statement of Errors Complained of on Appeal, filed November 23, 2016, at ¶10.

[27] While Appellant contends that another male individual drove him to the April 14, 2015 transaction and that the unknown male individual could in fact be "DQ," Appellant does not allege that any other individual accompanied him to the April 15, 2015 transaction, where the CI also purchased crack cocaine from him.

[28] N.T. Trial Day 2 at 140-141.

since February 29, 2016.[29]  She appeared well dressed, clean cut, and very articulate. Again, in examining the record, the Defendant presented no evidence to counter this clear eye witness description of these drug deliveries.

Therefore, there was clearly sufficient evidence for the jury to find Appellant guilty of the charges against him, and this court should properly be affirmed on appeal.

### iii.    The weight of the evidence against Appellant

Finally, Appellant challenges the weight of the evidence against him. To begin, as stated by the Superior Court in Com. v. Galindes, 2001 PA Super 315, 786 A.2d 1004, 1013 (Pa. Super. 2001), when reviewing the weight of the evidence:

> [A] true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but questions which evidence is to be believed.

Com. v. Galindes, supra, citing to Armbruster v. Horowitz, 1999 PA Super 333, 744 A.2d 285, 286 (Pa. Super. 1999). The Galindes Court further stated:

> An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." Com. v. Murray, 408 Pa. Super. 435, 597 A.2d 111, 113 (Pa. Super. 1991). Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Id.* "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Com. v. Valette, 531 Pa. 384, 613 A.2d 548, 549 (Pa. 1992). Our review, therefore, is confined to whether the trial court abused its discretion.

Com. v. Galindes, supra (emphasis original).

---

[29] N.T. Trial Day 1 at 20.

13

"It is the province of the jury to assess the credibility of witnesses, and a trial judge will not grant a new trial merely because of a conflict in the testimony or because he would have reached a different conclusion on the same facts, if he had been the trier of fact." Com v. VanDiviner, 599 Pa. 617, 630, 962 A.2d 1170 (Pa. 2009) (internal citations omitted). Here, the jury had the ability to evaluate the credibility of all of the witnesses, and to weigh the evidence both in favor of and against Appellant. That testimony and evidence is summarized in greater detail above, but if believed by the jury it would have shown that the CI was able to call Appellant on two separate occasions, arrange to meet with him to purchase crack cocaine, did meet with him twice and did purchase crack cocaine twice. Ultimately, the jury performed its duty and weighed the evidence, finding Appellant guilty beyond a reasonable doubt of the charges against him. In light of the testimony and evidence presented at trial, that verdict was not so contrary to the evidence as to shock one's sense of justice. Therefore, this court should properly be affirmed on appeal.

## Conclusion

After review of the record, it is clear that Appellant's claimed errors are baseless, and that the jury's verdict and the sentence entered by this court were both proper. Appellant attempted to read in a new standard range sentencing requirement that a court place on the record specific reasons for not entering a sentence at the bottom of the standard range. In effect, Appellant would have trial courts eliminate the "range" portion of a standard range sentence, leaving only a minimal "standard" sentence, and expand the aggravated sentencing range to incorporate sentences previously within the standard range. Appellant provided no statutory authority or case law citations to support that proposition, which directly contradicts the very concept of having a

14

"standard range" of sentences. In the alternative, Appellant challenged both the sufficiency and the weight of the evidence against him. A jury of Appellant's peers had the opportunity to weigh the evidence available, determine the credibility of the witnesses, and determine whether the Commonwealth met its burden to prove Appellant guilty beyond a reasonable doubt. The jury found that the Commonwealth did so, and the verdict was not so contrary to the evidence as to shock this court's sense of justice. Therefore, this court should properly be affirmed on appeal.

By the Court,

M. L. Ebert, Jr.,                    J.

District Attorney's Office

Public Defender's Office

15