**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN FARRELL | : | |
| | : | |
| Appellant | : | No. 1569 EDA 2023 |

Appeal from the PCRA Order Entered April 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004372-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN FARRELL | : | |
| | : | |
| Appellant | : | No. 1570 EDA 2023 |

Appeal from the PCRA Order Entered April 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004375-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN FARRELL | : | |
| | : | |
| Appellant | : | No. 1571 EDA 2023 |

Appeal from the PCRA Order Entered April 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004378-2014

J-S15038-24

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 3, 2024**

Appellant John Farrell appeals from the portion of the April 28, 2023 order denying claims raised through his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S §§ 9541-9546.[1]   Upon careful review, we affirm.

The PCRA court presented the following thorough account of the factual history of this case:

> The underlying charges stem from the arrest of [Appellant] along with multiple other men and women on March 21, 2014, for his active concerted participation in the brutal pack-like stabbing and pointing of gun attack that nearly killed three high school age athletes, [T.B.], [Jo.G.], and his cousin [Ja.G.].  On that fateful night, it was reported that Appellant, along with subsequently charged co-defendants, Tyler Bollinger, David Cramp, Ryan Palen and Hellena Andro, and others appeared *en masse* to prey upon the victims as they were walking with friends towards a pizza restaurant near Rowland Avenue in the far northeast section of Philadelphia after leaving a high school party in the nearby wooded section.
>
> Prior to the concerted attack, the assailants huddled as a group, armed themselves and disguised their appearance by pulling the hoods of their sweatshirts tight around their faces and knotting the strings.  They followed and taunted the complainants with obscenities and threats to shoot, stab and kill them.  To further provoke an altercation, multiple unbroken and broken

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court entered an order that granted relief in the form of the *nunc pro tunc* reinstatement of Appellant's PCRA rights and denied collateral relief on the merits of the claims presented.  Appellant's counsel timely filed three separate notices of appeal each listing one trial court docket number, and this Court *sua sponte* consolidated the appeals.

- 2 -

bottles were hurled at the complainants by Tyler Bollinger and the others with him. Tyler's girlfriend Hellena Andro joined the others in continually screaming goading obscenities at the complainants. These taunts had been personally directed to at least [Ja.G. and Jo.G.] and disparaged their related athletic abilities and teams.

In response, the complainants turned to confront what they mistakenly assumed was an unarmed group of attackers. As the groups met near the middle of Rowland Avenue, Ryan Palen, one of the charging assailants, pointed what appeared to be a firearm at one of the complainant's friends, Charles Walker, to prevent him from diffusing the situation. This gun was later recovered from the ground by law enforcement and determined to be a BB gun.

[Appellant] was observed rushing toward [A.G.] with a knife extended out. [Ja.G.], [A.G.'s] brother, unaware that Appellant had been armed with a knife, attempted to prevent the impending harm to Anthony by wrestling Appellant once to the ground. [Ja.G.] never moved from the ground thereafter because Appellant stabbed [Ja.G.] eight times in his chest, arm, and leg, in a frenzy. Appellant's attack upon [Ja.G.] had been so viciously intense that two people had to pry this perpetrator (Appellant) from [Ja.G.'s] immobilized body.

During this assault, complainants [T.B.] and [Jo.G.], who also tried to assist, were simultaneously stabbed in multiple parts of their body, and also nearly bled to death after each suffering critical injuries. [T.B.] recalled seeing a short stocky white male in khaki pants standing over his limp body as well. Appellant, a white male who was relatively shorter and stockier than his conspirators, was the only one of perpetrators attested later that night wearing blood-stained khaki pants.

Just after [T.B.] had been critically stabbed in his head, arm and three times to his back rendering him motionless on the ground, Tyler Bollinger's girlfriend, Hellena Andre, was observed kicking [T.B.] in the face thereby fracturing his jaw and loosening his teeth. [Jo.G.], although initially not realizing that he also had been critically stabbed three times in his back after fending off an attack by multiple men wearing hoodies, frantically called the 911 operator. [Jo.G.'s] gut-wrenching recorded pleas for aid made during this telephone call were played for the jury.

As the victims lay helpless, bleeding from their critical injuries, Appellant and his fellow assailants collectively ran to the nearby residence of Tyler Bollinger at 3403 Lansing Street.

* * *

Several uniformed Philadelphia police officers arrived following multiple radio transmissions to the chaotic scene around the 7500 block of Roland Street almost simultaneously to the arrival of medical personnel. Police Officer William Smith testified that eyewitnesses including Charles Walker directed him to a nearby residence where the fleeing group of attackers had fled. That residence located at 3403 Lansing Street was owned by Tyler Bollinger's father.

Officer Smith went to the front door and was met by Tyler Bollinger's father and his girlfriend who attempted to deflect attention from the group of teenagers scattering inside the property. Inside the residence, Officer Smith observed Tyler Bollinger, now shirtless, in a hall bathroom with bloodied pants splashing water on his upper torso with a showerhead. Tyler Bollinger was positively identified as one of the attackers by eyewitnesses when transported by officers outside the residence.

Philadelphia Police Officer Eric Lee testified that in response to radio transmitted request for aid from Officer Smith, he also arrived in full uniform and a marked vehicle at 3403 Lansing Street and observed Appellant, also now shirtless, wearing bloodstained tan pants, washing dried blood from his face while standing in in an upstairs bathroom with a bloodied gray T-Shirt and blue hooded sweatshirt near his feet. Appellant was also immediately identified at the scene by eyewitnesses as one of the assailants when transported outside the residence.

Philadelphia Police Officer Quinn testified at trial that in response to radio calls, he also rushed to respond to 3403 Lansing Street. Inside, he observed David Cramp hiding in an upstairs bedroom underneath a bunk bed behind a pile of clothing, wearing a black hooded sweatshirt with a Bristol Wrestling logo with dried blood on his hand, sweatshirt, and jeans. Officer Smith also observed Hellena Andro hiding motionless, trying to conceal herself from the officer's view in a comer of the same bedroom where David Cramp had been discovered. David Cramp and

Hellena Andro were also immediately positively identified by eyewitnesses outside the residence as perpetrators.

Two of the bloody knives that had been identified as being used in this assault were recovered following execution of a Search and Seizure Warrant at the residence of 3403 Lansing Street, Philadelphia PA by Northeast Detective Division Detectives including Detective Denis Murray. Tyler Bollinger gave a written statement to investigators admitting to investigators that he had collected, and hidden multiple knives used by his charged co[-]conspirators at this home.

Appellant, while in initial custodial detention, had switched his upper body clothing with David Cramp. His clothes and facial features which included a slight cut to the back of his head were photographed. Appellant gave a written and adopted statement to investigators that summarily admitted to participation in the stabbing with his charged co-defendants but argued that it had been justified by stating that "he did what he had to do."

PCRA Court Opinion, 9/13/23, at 7-11.

On direct appeal, a panel of this Court recited the following procedural history of this case:

Appellant was charged with aggravated assault and related offenses at three separate lower court docket numbers for each victim,[ *i.e.*, Jo.G., Ja.G., and T.B.,] and was listed for a consolidated jury trial with his codefendants. Prior to trial, co-defendants [Hellena] Andro, [David] Cramp, and [Ryan] Palen pleaded guilty. Thereafter, the Commonwealth agreed to sever the trials of Appellant and [Tyler] Bollinger. Appellant's trial, which was held first, resulted in a mistrial due to a hung jury. The Commonwealth then moved to consolidate Appellant's and Bollinger's cases for a joint jury trial, which the trial court granted. After several continuances, the consolidated jury trial was scheduled for October 10, 2017. Before trial started on that date, Bollinger entered into a negotiated guilty plea. Appellant proceeded to a jury trial from October 10 to 16, 2017.

At the conclusion of the jury trial Appellant was found guilty of three counts of aggravated assault, and one count each of conspiracy to commit aggravated assault and PIC. On January 4,

- 5 -

2018, the trial court sentenced Appellant to the following terms of incarceration: 5 to 15 years each for aggravated assault of [Jo.G.] and [Ja.G.], 6 to 18 years for aggravated assault of [T.B.], 5 to 10 years for conspiracy, and 2½ to 5 years for PIC. The aggravated assault convictions are to run consecutive to each other, with the other sentences to run concurrent, resulting in an aggregate term of incarceration of 16 to 48 years. N.T., 1/4/2018, at 75-78. Appellant was also ordered to undergo anger management and parenting classes, comply with the recommendations of a dual diagnosis assessment, receive vocational training, have no contact with the Victims or witnesses, pay restitution to [T.B.], and pay court costs and fines. *Id*. at 74-75, 77.

On January 16, 2018, Appellant timely filed a post-sentence motion for reconsideration of sentence, in which he challenged the discretionary aspects of his sentence. Aside from amending Appellant's sentence to provide Appellant credit for time served while on house arrest, the trial court denied Appellant's post-sentence motion on January 23, 2018.

*Commonwealth v. Farrel*, 590 EDA 2018, 240 A.3d 950, at 1-4 (Pa. Super. filed Sept 22, 2020) (unpublished memorandum) (footnotes omitted). On direct appeal, Appellant presented a single issue challenging the discretionary aspects of his sentence, and this Court affirmed the judgment of sentence on September 22, 2020. *See id*. Appellant did not seek further review with our Supreme Court.

The PCRA court set forth the subsequent procedural history as follows:

On December 14, 2021, Teri B. Himebaugh, Esquire filed a counselled [PCRA petition] on behalf of Appellant. On May 4, 2022, the Commonwealth filed a motion to dismiss Appellant's PCRA. On June 21, 2022, Attorney Himebaugh was permitted to withdraw as counsel. Scott P. Sigman, Esquire was appointed as counsel. On September 22, 2022, Daniel Johnson Auerbach, Esquire, entered his appearance on behalf of Appellant. On October 6, 2022, Attorney Auerbach filed an amended petition and

- 6 -

a motion to leave. On October 7, 2022, Robert Marc Gamburg entered his appearance on behalf of Appellant.

On April 25, 2023, a video evidentiary hearing was held to determine the timeliness of the petition and the underlying merits of the claim. Justin Capek, Esquire, standing in for Attorney Gamburg, represented Appellant. Following the presentation of evidence and argument of counsel, this [c]ourt granted the requested form of relief, which is to consider and reinstate *nunc pro tunc*, the original petition, filed by Ms. Himebaugh on behalf of Appellant. Additionally, this [c]ourt considered the second petition filed on behalf of Appellant, and noted that the amended PCRA petition, had recited exactly the same argument. Therefore, to the extent that they are mirror images of each other, this [c]ourt considered all three, and argument on the merits was heard. (N.T. 4/25/2023, p.39).

After determining that prior PCRA counsel was ineffective [for failing to file a timely PCRA petition, the court reinstated his PCRA rights and] heard argument on Appellant's issues [and] determined that they lacked merit and dismissed the petition. A formal Order of dismissal was filed on [April 27, 2023].

PCRA Court Opinion, 9/13/23, at 6-7.

This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

1. [Jo.G.] was stabbed during a melee brawl involving [Appellant] and others. The PCRA court agrees that nobody saw who stabbed [Jo.G.]. Did the PCRA court err by dismissing a PCRA petition without a hearing, which asserted that [Appellant's] appellate counsel was ineffective for failing to challenge the sufficiency of the evidence relating to the [Jo.G.] charges?

Appellant's Brief at 7 (suggested answer omitted).

In reviewing the denial of PCRA relief, our purview "is limited to examining whether the PCRA court's determination is supported by the

evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." ***Commonwealth v. Mitchell***, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Appellant's claim on appeal asserts a challenge to the effective assistance of counsel. Therefore, we employ a well-settled set of precepts:

> We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: [(1)] his underlying legal claim has arguable merit; [(2)] counsel's actions lacked any reasonable basis; and [(3)] counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

***Commonwealth v. Urwin***, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted) (brackets added).

Under the first prong of the ineffectiveness test, an appellant is not entitled to relief if his underlying legal argument has no merit. ***See Ousley***, 21 A.3d at 1246. In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***See Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

"With respect to the reasonable basis prong, we have explained that courts should not inquire as to whether there were other, more logical courses

of action counsel could have pursued; rather, the appropriate question is whether counsel's decision had any reasonable basis." ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023).

Concerning the third prong, as defined by our Supreme Court: "a defendant … is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." ***Commonwealth v. Spotz***, 84 A.3d 294, 315 (Pa. 2014) (citations, brackets, and internal quotation marks omitted). When an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***See Commonwealth v. Baker***, 880 A.2d 654, 656 (Pa. Super. 2005). Again, failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. ***See Urwin***, 219 A.3d at 172.

In his sole issue, Appellant argues that direct appeal counsel was ineffective for failing to raise a claim challenging the sufficiency of the evidence. ***See*** Appellant's Brief at 29-41. Appellant contends there was no direct evidence that he inflicted any of the stab wounds suffered by Jo.G. during the altercation, noting that Jo.G. did not identify Appellant as his assailant and that multiple other people involved could have been the assailant. ***See id***. at 30. To support his claim, Appellant posits that "[t]here is no evidence about [Jo.G.'s] position in the melee or that [Appellant] was

even in a position where he would be able to stab [Jo.G.]." *Id*. at 31 (emphasis omitted). Further, Appellant claims there was not sufficient evidence to support the convictions under a theory of conspiracy liability. *See id*. at 33-40. He asserts that the evidence established, "at most, [a] concerted action to taunt and hurl bottles." *Id*. at 39. Appellant surmises that "even such agreement would not make [Appellant] liable for another member of his group stabbing [Jo.G.]." *Id*.

We are cognizant that evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all elements of the offense beyond a reasonable doubt. *See Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008). The Commonwealth may sustain its burden entirely by circumstantial evidence and the jury, which passes upon the weight and credibility of each witness's testimony is free to believe all, part, or none of the evidence. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

The crime of aggravated assault is set forth at 18 Pa.C.S. § 2702 and provides in relevant part as follows:

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

- 10 -

18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

The Commonwealth, in sustaining an aggravated assault conviction, need only show the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred. **Commonwealth v. Galindes**, 786 A.2d 1004, 1012 (Pa. Super. 2001). Attempt, for aggravated assault purposes, is found where the accused intentionally acts in a manner that constitutes a substantial or significant step toward perpetrating serious bodily injury upon another. **Id.** The Commonwealth can establish specific intent from the circumstances surrounding the incident. **Id.**

In addition, Appellant was convicted of criminal conspiracy, and we are mindful that "[e]ven if the conspirator did not act as a principal in committing the underlying crime, [he] is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." **Commonwealth v. Gross**, 232 A.3d 819, at 839 (Pa. Super. 2020) (citation omitted). To sustain a conviction for criminal conspiracy under 18 Pa.C.S. § 903, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Fisher**, 80 A.3d 1186, 1190 (Pa.

2013) (citation omitted). "[T]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent." *Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted). A conspiracy is almost always proven by circumstantial evidence. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*). However, the evidence must rise above the mere possibility of guilty collusion. *See id*.

Regarding multi-person conspiracies entailing physical altercations, our Supreme Court's offered the following discussion in *Commonwealth v. Chambers*, 188 A.3d 400 (Pa. 2018):

> Fights involving multiple participants, particularly those in which a person interjects [themselves] into a brawl after it has commenced, present unique challenges for determining whether a conspiracy existed. As suggested above, direct evidence of the formation of a conspiratorial agreement is rare, and often must be derived from the facts and circumstances of each case. The agreement need not be formal, nor must it even be expressly communicated. It can be established instantaneously, or it can be the product of drawn-out deliberations. By way of example, in the context of multi-person fights, two participants can form a conspiracy to assault another person by discussing at length a plan to assault that person, or, alternatively, those same individuals can form the illicit agreement by mere nodding of heads, so long as they possess the requisite intent.

*Id*. at 411. The Court in *Chambers* further amplified:

> Each case must be evaluated on its own set of facts. Despite the variable circumstances under which a conspiracy can form, particularly in assault cases, it is axiomatic and well-established

- 12 -

that persons do not commit the offense of conspiracy when they join into an affray spontaneously, rather than pursuant to a common plan, agreement, or understanding.

*Id*. (citation and quotation marks omitted).

In addressing Appellant's challenge to the effectiveness of direct appeal counsel for failing to raise a sufficiency of the evidence claim, the PCRA court concluded that Appellant was responsible for the stabbing under a theory of conspiratorial liability:

> Here, the evidence firmly established that Appellant had conspired with his companions to attack [Ja.G. and Jo.G.] and their friends. The trial evidence proved beyond all reasonable doubt that this [w]as a concerted vicious premeditated assault in all respects.
>
> Appellant and his cohorts huddled together before the attack, taunted and hurled bottles at their victims as a pack, pulled up their hoodies to conceal their features before assaulting the victims, and had their knives ready and drawn before engaging in a swift, coordinated assault that left three high school students bleeding on the ground in ten to thirty seconds. After nearly killing three people[,] they fled together to co-defendant Tyler Bollinger's father's house, where they had attempted to wash away the evidence of their crimes and to hide the bloodied knives and themselves. Therefore, based [upon] the evidence of record and application of well-established Pennsylvania law, Appellant would have been liable for [Jo.G.'s] stabbing even if he could have established that all four of [Jo.G.'s] wounds had been inflicted by a different co[-]conspirator, which he could not.

PCRA Court Opinion, 9/13/23, at 16-17.

Following our review, we discern no error of law in the PCRA court's conclusions, which are supported by the record. Jo.G. testified that as Hellena was screaming at the victims, he observed a group of men across the street in a huddle. *See* N.T., 10/11/17, at 40. He then testified that within thirty

- 13 -

seconds he looked up again "and there was a bunch of kids … lined up in front of us." *Id*. Thereafter, the fight broke out. *See id*. Moreover, it is undisputed that Appellant was in possession of a knife during the incident and that he employed it criminally, admitting to stabbing at someone's leg. *See* N.T., 10/13/17, at 125-27.

In addition, T.B. testified the group that attacked them were all together in a cluster. T.B. explained that "[r]ight before they approached, they were kind of in a circle. They were -- they all had their hoods up when they were coming over." N.T., 10/12/17, at 11.

Further, it us undisputed that Appellant fled with his cohorts to the home of Tyler Bollinger's father, where they attempted to clean themselves and hide knives used in the attack. *See* N.T., 10/12/17, at 95-97. Officer Eric Lee testified that when he and his partner went upstairs in Bollinger's residence, "We found [Appellant] in the bathroom, in the middle of the upstairs in between two bedrooms. When we went in, he had no shirt on[,] and he was whipping [sic] blood from his face. At that point we detained him just for investigation, brought him downstairs and outside where some witnesses came and identified him as being involved in the altercation." *Id*. at 105. Also, Detective Denise Murray testified that, pursuant to a search warrant, two knives were discovered between the mattress and box spring in the front bedroom of Bollinger's home. *See id*. at 130-32.

Accordingly, viewing these circumstances in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth proved beyond a reasonable doubt that Appellant entered an agreement to commit or aid in an unlawful act with other persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy. Based on the above, we do not discern any error in the PCRA court's determination that a challenge on direct appeal to the sufficiency of the evidence to support Appellant's convictions of aggravated assault and criminal conspiracy pertaining to Jo.G. would have been meritless. Therefore, appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006) (holding that counsel will not be deemed ineffective for failing to raise a meritless claim).

For the foregoing reasons, we agree with the PCRA court that the challenge to the effective assistance of counsel raised by Appellant does not afford relief. Accordingly, we affirm the portion of the PCRA court's order denying in part Appellant's requested PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024